WILLIAM HENRY v. LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Railway injuries to employees—Negligence of fellow servants—Ditching of train—Broken track.*

The fact that the plaintiff in an action for a railway injury was hu. without his own fault or negligence does not of itself entitle 'him to recover, as it must further appear that the defendant is legally chargeable with the injury.

A railway company whose track is broken without any fault of its own, is under no obligation to its employees to repair it within any specified time, if it duly warns them so that they shall not be injured in consequence thereof.

A railway company is not liable to an employee for an injury caused by the negligence of a fellow-employee; as where the fireman on a freight train was hurt in consequence of the train being ditched through the engineer's neglect to obey signals which he saw and was bound, by the company's rules, to observe.

A railway company owes a duty to the public to keep its track in safe and suitable condition and run its trains with regularity and dispatch for the carriage and transportation of passengers and freight. But an employee cannot have a right of action against the company on this obligation.

Error to Lenawee.　Submitted Oct. 19.　Decided Oct. 31.

CASE.　Defendant brings error.　Reversed.

*Millard, Weaver & Weaver, Oscar G. Getzen–Danner* and *Ashley Pond* for appellant. Employees are held bound to bear the consequences of all the ordinary risks incident to their employment: *Ft. W. J. & S. R. R. Co. v. Gildersleeve* 33 Mich. 133; *Botsford v. M. C. R. R. Co.* 33 Mich. 256; *M. C. R. R. Co. v. Smithson* 45 Mich. 212; *Day v. T. C. S & D. Ry.* 42 Mich. 523; *Quincy Mining Co. v. Kitts* 42 Mich. 34; a railway company is not an insurer of the safety of its servant, and its duty is discharged if it uses reasonable care and precaution; *Porter v. H. & St. J. R. R. Co.* 71 Mo. 66: s. c. 2 Am. & E. R. R. Cas. 45–51; *G. R. & I. R. R. Co. v. Huntley* 38 Mich. 537; prudent management is all that is required of a railway company, and it cannot in reason be said that the facts disclosed in this case show less than the most prudent and careful management; *M. C. R. R. Co. v. Coleman* 28 Mich. 440; *M. C. R. R. Co. v. Smithson* 45 Mich. 212; *M. C. R. R. Co. v. Dolan* 32 Mich. 511; *Hard, Adm'r. v. V. & C. R. R. Co.* 32 Vt. 473.

*B. F. Graves* and *C. A. Stacy* for appellee. It is negligence for a railway company not to provide a suf-

ficient number of men to keep the road-bed in such good repair as to protect the lives of employees: *Flike v. B. & A. R. R.* 53 N. Y. 549; *Sprong v. B. & A. R. R.* 58 N Y. 56; *Booth v. B. & A. R. R.* 67 N. Y. 593: 73 N. Y. 38; Wood's Master and Servant 771; *Mad River Lake E. R. R. v. Barber* 5 Ohio St. 541; *Skipp v. Eastern Counties Ry Co.* 9 Exch. 223; whoever is permitted to exercise the master's authority in respect to this matter is charged with the master's duty, and the master is responsible for the agent's want of caution: Cooley on Torts 561; *Drymala v. Thompson* 26 Minn. 40; *Gibson v. Pacific R. R.* 46 Mo. 163; *Fuller v. Jewett* 80 N. Y. 46; *Speed v. A. & P. R. R.* 71 Mo. 303.

MARSTON, J. That the plaintiff in this case was severely injured without fault or negligence on his part is not questioned. This alone will not entitle him to recover damages from the defendant for the injuries so received while in its employ, unless it farther appears that the defendant is legally chargeable therefor.

The charge made in the declaration is, that it was the duty of the company to provide a good and suitable railroad track for all its trains at all times to run over, and that it had allowed its track to become unfit, dangerous and out of repair and some of the rails to be taken up and left out, thereby causing the accident.

The undisputed evidence showed that on the afternoon of December 28, 1880, a section foreman of the defendant company discovered a broken rail; that he had two laborers with him at the time; that he immediately sent his men out on the line of the road to put out signals to warn approaching trains, he going in the opposite direction to intercept and warn a passenger train then expected; that this train was stopped and then safely run over the dangerous place. The foreman then sent one of his men to the westward, the direction from which the train had come, to place the necessary signals on the track to notify approaching trains of the danger. After this was done, work was commenced

at once by these three men to replace the broken rail, and while they were still at work and before completing the same, a freight train, upon which the plaintiff was working as a fireman, coming from the west, ran into this open place, was ditched and the plaintiff injured.

It was not claimed upon the argument, nor could it have been upon this record, that the road and track of the defendant had not been kept and maintained in good order and repair, or that there had been any negligence in not sooner discovering this broken rail, or that there was any unnecessary delay thereafter in attempting to make the necessary repairs. Nor was it claimed that there was any patent or latent defect in the broken rail. The break was attributed to the excessively cold weather and could not have been anticipated or prevented. The negligence relied upon and attempted to be proven was, that a sufficient number of men was not employed upon this section, to give proper notice to approaching trains in case of an accident and to make the repairs within such reasonable time, as at that season of the year would be required by ordinary prudence under all the existing circumstances and in view of the probable dangers of injury. It was claimed that at least four men should have been employed, while there were in fact but three. The negligence charged, in view of the evidence introduced, was not that the company had carelessly permitted its track to become unsafe and dangerous, but that upon a good and safe track, kept in proper repair, a good and suitable rail was broken, through no fault of the company, and although the injury was promptly discovered, and steps at once taken to warn approaching trains and replace the broken rail, yet that a force of three men was not sufficient to perform such duties within such reasonable time as the law in such a case would require.

In behalf of the company it was argued that the company owed no duty to its employees to repair this track within any specified time or at all; that as to its employees it might leave the track in an impassable condition, while its duty to the public would be very different, and that the duty

it owed its employees in such a case, was to give them sufficient notice of the danger so that they might not receive any injury in consequence thereof. This position would seem to be unanswerable. The company owes a duty to the public to keep its track in a safe and suitable condition, and also to run its trains with regularity and dispatch over 'the same, for the carriage and transportation of passengers and freight. In so far as its employees are concerned, if the track is injured and thereby becomes unsafe, the company is under no obligation to repair the same. It must however give them due and timely notice of the injury so that danger may be averted, and having given such notice may take whatever time it may deem proper to repair the same. If the injury is such an one as to prevent the running of trains over that part of the track, when proper notice thereof is given, the company may take such time to repair the same as it pleases, even an unreasonable time, and its employees cannot call it to account therefor.

If the company owes a duty to its employees to keep the track in a good, safe and suitable condition, upon which they could run, propel and manage its locomotives and trains of cars, as charged—and if the company must at all times have a sufficient force of men on hand to repair in case of casualties of this kind, within even a reasonable time, the question at once arises by what standard shall these things be determined? If a rail is broken, must the force be sufficient to repair the track before the arrival thereat of the next train? If so then a much larger force must be employed where a train is approaching than in a case where several hours would intervene, although in either event the extent of the injury to the track were the same. The adoption of such a rule would permit no allowance to be made between slight and extensive injuries to the track. The injury might be such that a few men could make the necessary repairs in a very short time, or be of so serious a nature that a large force would necessarily be employed for days. Then how could the company know what force would be required; should it anticipate slight, ordinary or severe

damage to its track, and how and by whom should injuries thereto be classified? Then again the same rule could not be applied to all roads alike. Where the business of the road is large and many trains are daily running over the same, a much more strict rule and larger force would necessarily be required than in a case where but few trains were running.

It may be said that the duty must always be to employ a sufficient force to make the repairs within a reasonable time, in view of the nature of the injury and the business of the road, and that such questions must be submitted to a jury under proper instructions. This is the best answer the nature of the questions will admit of, although a dangerous one when we consider the claim made in this case that four men instead of three should have been employed. But the duty to promptly repair its track or to repair within a reasonable time, grows out of the duty to carry freight and passengers with promptness and dispatch. This is the contract obligation which the company enters into with its patrons, but which it has not entered into with its employees. As to them it may delay its trains, or it may stop them, temporarily or permanently, and the employee cannot complain or seek redress in damages in consequence thereof. Their claim if any would grow out of their contract relation with the company for employment, and would not be based upon a stoppage in the running of trains caused by delay in repairing the track, but for their wages to which they would be entitled, if employed for a definite period, whether trains were run with regularity or were not run at all. There could therefore be no such thing as a duty to the employees to repair within a reasonable time or to repair at all. The duty to them is to furnish a reasonably good and safe track, and if an injury occurred thereto, to discover the same with reasonable diligence and promptly give due and timely notice thereof to its employees so that they might be protected from danger.

In what has been said we have had in mind an accidental damage to a track kept and maintained in a uniformly good

state of repair, and not to one permitted to fall into an unsafe and dangerous condition.    Whether a different rule would be applicable to such a state of affairs we are not called upon in the present case to determine.

The declaration in this case does set forth that the train in question was suffered " to run into the gap without giving the conductor or other officers in charge of said train any warning or signals of danger whatever." Whether this is sufficiently alleged in the declaration to enable the plaintiff to recover if proved may at least admit of serious doubt. But the evidence shows that signals were put out and observed by the engineer of the train, and that if he had obeyed the same, as the rules of the company required him to do, no injury to the plaintiff would have resulted.    It was the negligence of the engineer of the plaintiff's train that caused the injury to him.  This is not counted upon at all, and even if it were, it would be the negligence of a fellow servant for which the company would not be liable.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.