CATHERINE I. ENGLAND *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.     March 9, 1891. — April 8, 1891.

Present: FIELD, C. J., C. ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Personal Injuries — Railroad Passenger — Invitation to alight —
Contributory Negligence.*

A passenger, a woman, upon a railroad train in the evening, when the brakeman opened and fastened back the door of the car and called out the name of her station, passed out upon the platform, and, receiving no warning from the brakeman, stepped off upon the platform while the train was still in motion, and, falling under the train, was injured. The place where she attempted to get off was dark and badly lighted, and she supposed that the train had come to a standstill. *Held*, that she was guilty of contributory negligence, and could not recover for her injuries.

TORT for personal injuries occasioned to the plaintiff by falling under a train on the defendant's railroad, in which she was

being carried from Boston to Malden, as she was alighting from the train at or near a station in the latter city.   Trial in the Superior Court, before *Aldrich*, J., who ordered a verdict for the defendant; and the plaintiff alleged exceptions, which, so far as material to the point decided, appear in the opinion.

*S. H. Tyng*, for the plaintiff.

*W. I. Badger*, for the defendant.

MORTON, J.   Without considering the question whether there was any evidence of negligence on the part of the defendant, and without implying that there was, we are of opinion that the conduct of the plaintiff was such as to prevent her from recovering, on the ground that there was a want of due care on her part. It is clear from her testimony that she attempted to alight from the train while it was in motion.   She admitted on cross-examination that the train must have been in motion when she got up from her seat, and as she walked through the car to the rear platform, and as she stepped out on to the platform, and off the car.   Her husband, who followed her as she got up to go out of the car, and was four or five feet behind her, also testified that the car was in motion when he was walking along the aisle, when he went upon the platform, and while his wife was descending the steps of the car.   It also appeared from her testimony that the train went about one car length, and from her husband's testimony that it went about two car lengths, beyond the point where she fell before it came to a stop.   It likewise appeared that the place where the plaintiff tried to get off was dark, and not lighted.   She testified that there was no light there, and her husband, in the course of his testimony, said it was perfectly dark on the steps of the car, and on the concrete platform at the station, — so dark that a person could not see where he or she was going.   And this was uncontradicted.   The plaintiff seeks to excuse her conduct, on the ground that the calling of the station by the brakeman, and the opening and fastening back of the door by him, and his failure and the failure of any one in the employ of the defendant to warn her of the danger, constituted an invitation to her to alight, and an assurance, on which she was justified in relying, that it was safe to do so.   It is also claimed by the plaintiff, that there was testimony tending to show that the interval between passing

the Winter Street crossing, which she noticed, and the calling of the station by the brakeman, was ample for the train to stop; that, using all her senses, she believed it had done so before she left her seat; that, as she turned to go down the steps, she looked to see if everything was all right, as she supposed it was; and that trains from Boston usually stopped about a car length beyond the Winter Street crossing, which was situated just south of the station. We assume, in favor of the plaintiff, that this place of stopping would bring the train not far from where she attempted to get off.

Assuming that the action of the brakeman in calling the station and fastening back the door was to be regarded as an invitation, it was clearly not an invitation to alight from a moving train, but from the train after it had come to a stop. It did not authorize the plaintiff to attempt to get off from the train when in motion. But we do not think the action of the brakeman can, as matter of law, be regarded as an invitation. It was, at the most, simply an announcement that the train was near the station, and would presently stop, and was given in order that passengers intending to alight there might prepare themselves to do so when the train stopped. *Bridges* v. *North London Railway*, L. R. 6 Q. B. 377. *Lewis* v. *London, Chatham, & Dover Railway*, L. R. 9 Q. B. 66. It is matter of common observation, that this is the object in announcing stations on railway trains; and there was no evidence of any custom or usage on the part of the defendant road not to call the station until it had been reached and the train had come to a stand. The fact that the brakeman did not warn her was not an assurance that it was safe for her to alight, any more than his calling of the station was an invitation to her to get off of the train while in motion. His position on the car platform, too, was not such as to convey any invitation or assurance to her, as the court intimated might have been the case with the gate-keeper in *Johanson* v. *Boston & Maine Railroad, ante*, 57. Besides, he may well have assumed that, although she was upon the platform or on the step, she would not actually attempt to alight until the train came to a stop. Notwithstanding she says she used all her senses, — sight, hearing, and feeling, — it is difficult to understand how, in the exercise of due care, she could have failed to see that the train

was in motion.   There was no occasion for haste, because there was no passenger before her.   There was nothing to distract her attention.   There was no evidence that the train had come to a stop, and was in the act of starting again as she was in the act of leaving it.   There was nothing unusual about the manner or the place of stopping, so far as appears from the exceptions. She was not a stranger, for, according to her own testimony, "she had lived in the vicinity for some time, and knew it pretty well."   Her husband, who was within a few feet of her, knew all the time that the train was in motion.   The cars were lighted in the usual manner, and upon the concrete platform, on the side on which the plaintiff stepped off, was a lamp, and beyond, obstructed only by some small trees, an electric street light, and both were within easy range of the plaintiff's vision.   The least notice of the light shining through the car windows on to the concrete platform, or the lamp, or the electric light, would have shown the plaintiff that the train was in motion.   The plaintiff acted on the belief that the train had stopped when it had not stopped, and this mistake was due to her own omission to use reasonable care.   The fact that it was dark where she attempted to alight rendered more caution not less necessary on her part. To step off of the train where it was, as the plaintiff's husband testified, "so dark that a person could n't see where he or she was going," under circumstances that did not amount to an invitation on the part of the defendant to do so, or an assurance that it was safe to do so, and where no necessity existed for doing it, was of itself a contributory act of carelessness on the part of the plaintiff.   *Bridges* v. *North London Railway,* L. R. 6 Q. B. 377, 387.

The fact which the plaintiff offered to show, that passengers were coming out of the rear car, as if about to alight, had no tendency to show that the plaintiff, in stepping from the car while in motion, was herself in the exercise of due care; and her belief that the passengers were going to step from the car, or that they were coming out because the train had stopped, would not excuse her from using proper care.

*Exceptions overruled.*