STEPHEN MEARNS, Respondent, *v.* THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, Appellant.

1. STEAM SURFACE RAILROADS — STARTING OR STOPPING OF TRAINS. It is not the duty of a steam surface railroad company to expressly warn its passengers of the starting or stopping of trains.

2. NEGLIGENCE — ALIGHTING FROM MOVING TRAIN. A passenger upon a steam surface railroad, who, in the evening, as a vestibule train having the vestibule lighted, was nearing a station and the guard called out " All out, Jersey City, last stop," leisurely prepares himself to leave the train, waits a half a minute for it to reach the station building, and then, after the guard has opened the vestibule door and stepped across to the vestibule of the car ahead, proceeds out into the vestibule, and down the steps to the platform, in the belief that the train had stopped, although the guard gave him no warning or intimation to the contrary, cannot recover damages of the carrier for injuries sustained by reason of the train being still in motion, since no act or direction of those having charge of the train interfered with his free agency or in any manner diverted his attention.

*Mearns* v. *Central R. R. of N. J.,* 23 App. Div. 298, reversed.

(Argued April 6, 1900; decided May 15, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, made December 10, 1897, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term, and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Austen G. Fox* and *Robert Thorne* for appellant.    The act of calling " Jersey City, all out," at a time when the plaintiff knew that the train was still approaching the terminal station was not an invitation to alight, and would not have justified the plaintiff in leaving the train before it stopped, had it consisted of ordinary cars.    The defendant is not liable simply because the train consisted of vestibuled cars, and the vestibule doors were opened before all motion of the train had ceased.    (*Lewis* v. *L., C. & D. Ry. Co.*, L. R. [9 Q. B.] 66 ; *McGrell* v. *B. O. B. Co.*, 153 N. Y. 265 ; *Glushing* v. *Sharp*, 96 N. Y. 676 ; *Vedder* v. *Fellows*, 20 N. Y. 126 ; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 N. Y. 31 ; *England* v. *B. & M. R. R. Co.*, 153 Mass. 490.)    There was no evidence to show that the defendant failed of its duty to exercise the highest degree of care that human prudence and foresight could suggest with respect to any condition endangering the success of the undertaking to carry the plaintiff safely.    (*Stierle* v. *U. Ry. Co.*, 156 N. Y. 70 ; *Kelly* v. *M. Ry. Co.*, 112 N. Y. 443 ; *Morris* v. *N. Y. C. & H. R. R. R. Co.*, 106 N. Y. 678 ; *Lafflin* v. *B. & S. R. R. Co.*, 106 N. Y. 136 ; *Palmer* v. *Penn. Co.*, 111 N. Y. 488.)    The plaintiff failed to show that he did not contribute to the accident by an omission of ordinary care on his part.    (*Lafflin* v. *B. & S. R. R. Co.*, 106 N. Y. 136.)

*Thomas P. Wickes* for respondent.    The negligence of the defendant was clearly established.    (*Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 51 ; *Bucher* v. *N. Y. C. & H. R. R. R. Co.*, 98 N. Y. 131 ; *Carroll* v. *S. I. R. R. Co.*, 58 N. Y. 126 ; *Maverick* v. *E. A. R. R. Co.*, 36 N. Y. 378 ; *Kelly* v. *M.*

*Ry. Co.*, 112 N. Y. 450; *Bowen* v. *N. Y. C. R. R. Co.*, 18 N. Y. 408; *Barrett* v. *T. A. R. R. Co.*, 45 N. Y. 628; *R. R. Co.* v. *Derby*, 14 How. [U. S.] 468; *R. R. Co.* v. *Horst*, 93 U. S. 291; *Piper* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 228.) Plaintiff was not, as a matter of law, guilty of contributory negligence. (*Morrison* v. *E. Ry. Co.*, 56 N. Y. 307; *Sheridan* v. *B., C. & N. R. R. Co.*, 36 N. Y. 39; *Solomon* v. *M. Ry. Co.*, 103 N. Y. 442; *Filer* v. *N. Y. C. R. R. Co.*, 59 N. Y. 351; *Salter* v. *U. & B. R. R. R. Co.*, 88 N. Y. 49; *Distler* v. *L. I. R. R. Co.*, 151 N. Y. 424; *Terry* v. *Jewett*, 78 N. Y. 344; *Boyce* v. *M. Ry. Co.*, 118 N. Y. 314; *Nowell* v. *Mayor, etc.*, 20 J. & S. 387; *Brassell* v. *N. Y. C. & H. R. R. R. Co.*, 84 N. Y. 246.) The case, as made by the plaintiff's evidence, was one that should have been left to the jury, and it was error both to grant the nonsuit and also afterwards to refuse to set it aside. (*Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 47; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; 2 Redfield on Railways, 231; *Thurber* v. *H. B., M. & F. R. R. Co.*, 60 N. Y. 326; *R. R. Co.* v. *Stout*, 17 Wall. 657; *W. & G. R. R. Co.* v. *McDade*, 135 U. S. 554; *D., L. & W. R. R. Co.* v. *Converse*, 139 U. S. 469; *R. R. Co.* v. *Powers*, 149 U. S. 43; *Greany* v. *L. I. R. R. Co.*, 101 N. Y. 423.)

HAIGHT, J. This action was brought to recover damages for a personal injury. The plaintiff was a passenger on the defendant's vestibuled train known as the Royal Blue Line, leaving Washington about noon on the 20th day of December, 1894, and arriving at Jersey City about six o'clock of the same evening. As the train was nearing the station at Jersey City the conductor or guard called out, "All out, Jersey City, last stop." The plaintiff then got up and began to get ready to leave the train. He had been sitting a long time without standing. He straightened his limbs, smoothed his clothing, looked at his watch and then put on his overcoat, after which he picked up his umbrella and bag and started toward the door. The conductor or guard stood facing the door of the

vestibule, which had not as yet been opened. The plaintiff then leaned against a partition and stood waiting for half a minute, during which time the train was still in motion, but moving smoothly and without any jar or jerks. The guard then opened the vestibule door and stepped across to the vestibule of the other car. At this the plaintiff, supposing the train had stopped, stepped out into the vestibule, took the rail with his right hand and passed down the steps and thence off on to the platform. As he did so he fell and both feet were crushed, one above the ankle and the other across the toes. It appears that he stepped from the train while it was in motion and was just entering the depot shed. He was unable to describe just the manner in which his feet were crushed, but it is supposed that they were run over by the wheels of the car. There was a light in the vestibule of the car and the plaintiff saw the steps, three in number, as he passed down from the vestibule, but did not see the ground. The guard was partially facing him as the plaintiff passed out of the car into the vestibule, but gave him no warning or intimation that the car had not stopped.

Upon these facts the trial court dismissed the complaint, and we think, properly. In the case of *Solomon* v. *Manh. Ry. Co.* (103 N. Y. 437, 442), ANDREWS, J., in delivering the opinion of the court, says : " It is, we think, the general rule of law, established by the decisions in this and other states, as claimed by the learned counsel for the respondent, that the boarding or alighting from a moving train is presumably and generally a negligent act *per se*, and that in order to rebut this presumption and justify a recovery for an injury sustained in getting on or off a moving train, it must appear that the passenger was, by the act of the defendant, put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety." Apply-

ing this rule to the facts under consideration it is evident that there is a total absence of any act or direction of those having the charge of the train which interfered with the free agency of the plaintiff, or that in any manner diverted his attention. All that was done by the guard was to call out, " All out, Jersey City, last stop." This notice was given before the train had stopped, and this fact was well understood by the plaintiff. He knew it to be the usual notice given in advance of the arrival of the train at its stopping place, notifying the passengers that the train was nearing the station, in order that they might get ready to alight. He acted upon the notice leisurely, preparing himself to leave the train, gathering together his belongings and then walked toward the front of the car, stopping and leaning against a partition for a time, waiting unquestionably for the train to arrive at and enter the station. No unusual situation was created. He was in no manner interfered with. As the car was entering the train house the guard stepped into the vestibule and opened the door. He then stepped into the vestibule in front as the plaintiff stepped out and descended the steps. There was nothing unusual in this. Nothing had been done or said that would lead the guard to suppose that the plaintiff did not understand the situation or that he was mistaken about the train having come to a stand. Ordinarily, passengers have no difficulty in determining whether a train has stopped. They are usually as sensitive to a moving car as any guard or conductor could be, and heretofore it has never been understood to be the duty of a railroad company to expressly warn its passengers of the starting or of the stopping of the train. This was not a rapid transit or elevated railroad, in which a different custom may prevail. If such a duty is now imposed upon railroad companies their burden will be materially increased and they cannot properly open the door of a car for the exit of passengers until it has actually come to a stop. No case to which our attention has been called has gone to this extent. In *Filer* v. *N. Y. C. R. R. Co.* (49 N. Y. 47) the plaintiff, a woman, was directed

by the brakeman to get off the car while it was in motion, telling her that the car would not stop at the station or move more slowly. She was thus put to an election between two alternatives, either to be carried on beyond her destination or else to take the chance of injury by alighting while the car was in motion; thus bringing the case within the exception to the rule given by ANDREWS, J., in the *Solomon* case. In *Bucher* v. *N. Y. C. & H. R. R. R. Co.* (98 N. Y. 128) the train did not stop at the station for which the plaintiff had purchased his ticket and at which he had the right to get off. The train merely slowed up and did not furnish an opportunity to leave the cars in accordance with the plaintiff's contract. He was told by the conductor to step off or jump off. He obeyed and was injured. Here also was a situation presented in which the plaintiff was called upon to elect between alternatives as in the *Filer* case, in addition to a command from the conductor by which he was given to understand that he could alight in safety. In *Lent* v. *N. Y. C. & H. R. R. R. Co.* (120 N. Y. 467) the plaintiff had entered a car in which the seats were all occupied. She passed through to the rear platform and was informed by the conductor that another car would be put on. An empty car was backed down and came in contact with the platform of the car on which she was standing. The conductor cried out " All aboard," but the drawheads of the two cars failed to catch and in consequence the car receded several feet and as the plaintiff attempted to pass forward into the vacant car she fell between the two and was injured. In this case the plaintiff was clearly misled by the statements of the conductor. She had been informed that an empty car was to be attached. It was backed down so that the platforms of the two cars came together. The conductor gave his notice, " All aboard," from which she was induced to believe that she could pass from the platform of the car on which she was standing, to that in the rear, in safety. In *Lewis* v. *D. & H. C. Co.* (145 N. Y. 508) the plaintiff desired to leave the car at a station at which the train did not stop. He was advised by the conductor that before reaching the station the train would slow up near a

bridge to enable a freight train, approaching on another track, to pass. The conductor told him to get off there. He went to the rear of the car to alight and was thrown from the car by a jerk, causing him to fall upon another track on which the freight train was passing. Here also we find a situation presented very similar to the *Filer* and *Bucher* cases. (See, also, *Lafflin* v. *B. & S. W. R. R. Co.*, 106 N. Y. 136; *Hunter* v. *C. & S. V. R. R. Co.*, 126 N. Y. 18; *Piper* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 224; *Distler* v. *L. I. R. R. Co.*, 151 N. Y. 424, and *England* v. *B. & M. R. R. Co.*, 153 Mass. 490.)

The order of the Appellate Division should be reversed and judgment entered upon the nonsuit affirmed, with costs.

Parker, Ch. J., Gray, O'Brien, Landon, Cullen and Werner, JJ., concur.

Order reversed, etc.