WALTERS, Appellant, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

*January 31—February 18, 1902.*

*Railroads: Injuries to passengers: Negligence: Stopping at stations: Passenger alighting from moving train: Contributory negligence: Court and jury.*

1. It is the duty of a passenger carrier to stop its train at stations a sufficient length of time to enable the passengers, exercising ordinary diligence, to get on or off, and unless it does so it is guilty of negligence.

2. In order to relieve a passenger carrier of negligence in starting its train before all passengers desiring to get on or off at a station have done so, it is not enough that a reasonable person, standing where the conductor did, would have been of the opinion that all who so desired had alighted; if a reasonable time has not in fact elapsed, it is negligence to start the train.

3. Ordinarily, the question of whether a reasonable length of time was allowed or not is a question for the jury.

4. Plaintiff was injured by reason of the starting of defendant's train, upon which he was a passenger, while he was attempting to alight at a station.  It appeared, among other things, that plaintiff, who was near the front door which was locked, was compelled to make his way slowly through a crowded aisle, to the rear door.  *Held*, that the question whether the train stopped a sufficient length of time to enable plaintiff, in the exercise of ordinary diligence, to get off in safety, was for the jury.

5. An adult who unnecessarily steps from a train which he knows to be in motion is guilty of contributory negligence as a matter of law.

6. Plaintiff was injured while attempting to alight from defendant's vestibuled train. It was at night and the train had commenced to move after having stopped. Plaintiff and a companion testified that they did not know the train was moving. Other testimony was to the effect that the conductor warned them to wait and he would stop the train. The evidence as to whether plaintiff heard such warning, or could have heard it by exercising reasonable care, was conflicting. *Held,* that the issue as to plaintiff's contributory negligence should have been submitted to the jury, as it could not be said that contributory negligence was proven as matter of law.

CASSODAY, C. J., dissents.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This is an action to recover for personal injuries. The plaintiff was a passenger on the south-bound vestibule passenger train upon the defendant's road, which left the city of Madison shortly after 6 o'clock p. m., December 9, 1899, he having a ticket for the city of Oregon, where he lived. He obtained a seat in the smoking car, which was the first passenger car upon the train. The car was crowded, many people standing in the aisles. When the train reached Oregon, it stopped opposite the platform, and the plaintiff, with some others, prepared to leave the train. Before the plaintiff reached the vestibule, however, at the rear of the car, the train had started, and the plaintiff stepped off on the depot platform while the train was moving, and was hurt. The plaintiff's own evidence tended to show that he sat five or six seats from the front of the car; that when the train arrived at Oregon he started to get out, and first walked a few steps toward the front door of the car, until some passenger said that it was locked; that he then turned around, and worked his way toward the rear door, through the people standing up in the aisles, making as rapid progress as he could, and passed into the vestibule; that no one spoke to him that he was aware of; that he passed down the steps and stepped off, not knowing that the train was moving, and first discovered that fact when he

struck the platform. One C. A. Hanan was also a passenger in the smoking car, and knew the plaintiff, and was also desirous of getting off at Oregon. Hanan's testimony was to the effect that the aisle of the car was crowded, and he (Hanan) was standing in the aisle near the forward door of the car, and started for that door, and found that it was locked, and then turned around, and told *Walters* that he could not get out there, and *Walters* also turned around, and started for the rear door of the car about six feet ahead of the witness; that they went along as fast as they could, and that just as he (witness) got into the vestibule *Walters* was dropping off the train; that he (witness) met a train hand in the vestibule, and the train hand reached up to pull the bell cord, and said, "Hold on, I will stop the train;" that *Walters* was then at the foot of the steps, and witness said to him, "Hold on, *John;* they will stop the train," but just as he said that *Walters* was stepping off; that the witness did not think that the train was moving until the train hand told him. W. T. White, the conductor of the train, testified that there were three passenger coaches and a parlor car upon the train, and that when it reached Oregon he had just finished taking up tickets, and got off of the platform at the rear end of the train, and walked forward to the smoking car, and when he got to the rear end of the smoking car he looked to see if everybody had gotten off, and thought all had, and gave the signal to start the train, and got on the steps of the vestibule at the rear end of the smoker; that he met two or three men in the vestibule, who wanted to get off, and told them to wait a second, and he would stop the train, and stepped inside of the smoker, and pulled the bell cord, and then found that the men had got off. One H. D. Hanson testified that he was on the platform at Oregon to take this train south to the next station; that he waited until he thought that all had got off, and got on the rear end of the smoker, and as he got into

the vestibule he met the plaintiff and another man, and this other man said, "Look out, *John!*" and the witness looked around, and did not see *Walters,* but saw only the second man on the steps; that then the conductor said, "Hold on, I will stop the train," and pulled the bell cord, and the train stopped, and the second man got off; that Hanan spoke before the conductor did, and that the first he saw of the conductor was when he reached to pull the bell rope, and that he did not see the conductor come up the steps at all. The night was rainy, and very dark. The depot platform was 400 feet long, and was lighted by three large kerosene lamps on posts, one near each end of the platform and one near the middle; all being lighted. There were also lights in the station and a light in the roof of each vestibule. The plaintiff was well acquainted with the station and platform at Oregon.

At the close of the evidence, the court directed a verdict for the defendant, and from judgment thereon the plaintiff appeals.

For the appellant there were briefs by *Clancey, Loverud & Gilman,* and oral argument by *J. M. Clancey.*

*Edward M. Hyzer,* for the respondent.

WINSLOW, J.    A verdict for the defendant was directed in this case because, in the opinion of the trial court, (1) there was no evidence of negligence on the part of the railway company, and (2) the evidence conclusively showed contributory negligence on the part of the plaintiff. These claims will be considered in their order.

1. In granting the motion, the trial judge said:

"It is without dispute that the passengers had alighted from the two coaches, so that the conductor was warranted in concluding that no more passengers were coming to alight from the train at the time he gave the signal to start, as there was none in sight upon the vestibule or upon the steps from which he could have known that other passengers were to get

off. I think there is nothing to show that he was guilty of carelessness in giving the signal for that train to start at that time."

The idea in the mind of the trial judge evidently was that if the conductor, standing on the platform, was warranted in supposing that all the passengers who wished to get off at Oregon had got off when he gave the signal to start the train, then the company was not negligent. It is very manifest that the court applied the wrong test. It may be that any reasonable person standing on the platform where the conductor did would have been of the opinion that all who desired to leave at Oregon had done so, but this is not sufficient. If a reasonable time had not *in fact* elapsed to enable all passengers to get off who wished to do so, it was negligence to start the train. It is the duty of a passenger carrier to stop its train at stations a sufficient length of time to enable passengers to get on or off in the exercise of ordinary diligence, and unless it does so it is guilty of negligence. 1 Fetter, Carriers, § 66, and cases cited. This proposition was, in substance, laid down by this court in *Davis v. C. & N. W. R. Co.* 18 Wis. 175, and has not been modified since that time. It was there said that it was the duty of a railway company to stop the train at the station where a passenger wishes to alight a suitable and reasonable time to enable him to do so, "and, if they did not, they were certainly guilty of carelessness and inattention to the lives and safety of the passengers desiring to leave the train at that place." The authorities in support of this proposition are so numerous that it is embarrassing to attempt to name them. They will be found cited in Mr. Fetter's work in the note to the section above cited, and in a note upon page 576, 5 Am. & Eng. Ency. of Law (2d ed.). Ordinarily, the question whether a reasonable length of time was allowed or not is a question for the jury. It will depend largely upon the surrounding circumstances,—whether there are few or many passengers, whether the cars are crowded or not, whether the

landing place is easy or difficult, whether the passenger is vigorous and active or feeble and incumbered with parcels, and many other circumstances which will occur to the mind. In the present case there were many circumstances present which evidently had a tendency to delay the passengers in alighting from the train. It was crowded. The aisles were full of people standing up. Locomotion through the aisle was necessarily slow. The front door of the car seems to have been locked, so that the plaintiff and his companion, through no fault of their own, lost valuable time in endeavoring to get out. Altogether the evidence was ample to go to the jury upon the question whether the train stopped a sufficient length of time to enable passengers using ordinary diligence to get off in safety.

2. The question of contributory negligence was also one for the jury. It is well settled that an adult who unnecessarily steps from a train which he knows to be in motion is guilty of contributory negligence as a matter of law. *Brown v. C., M. & St. P. R. Co.* 80 Wis. 162. But in the present case the plaintiff testifies that he did not know the train was moving when he stepped off. While such a statement might well seem incredible if made twenty-five years ago, it is not so now. It is matter of common knowledge that vestibule trains, with improved couplers, and running on a first-class roadbed, frequently start so noiselessly and imperceptibly as to attract no notice, especially when the outside darkness prevents the passenger from noticing the fact by the use of his eyes. In the present case both the plaintiff and the witness Hanan testify that they did not know the train was in motion, and we cannot say, as matter of law, either that this testimony is incredible, or that they were conclusively guilty of negligence in not knowing the fact. There is evidence that the conductor met the two men in the vestibule, and said, in substance, to them, to stop a moment, and he would stop the train. Of course, if the plaintiff heard this, or ought, in the exercise of ordi-

nary care, to have heard it, before he stepped from the train, he would be chargeable with knowledge that the train was in motion; but the testimony is quite conflicting on this point. The plaintiff says no one spoke to him, that he was aware of. The witness Hanson testifies that Hanan spoke before the conductor, and said, "Hold on, *John!*" while Hanan himself says that just as he spoke to Walters he was stepping off from the train. Altogether it cannot be said that contributory negligence was proven as matter of law. The plaintiff was entitled to a reasonable time to leave the car under the circumstances. His testimony and that of Hanan tends to show that they proceeded with reasonable expedition in making their way out. The court cannot say, under the evidence, that the plaintiff must have known that the train was in motion, nor that the plaintiff must have heard the remark of the conductor or Hanan before he stepped off. The issues in the case should have gone to the jury.

*By the Court.*—Judgment reversed, and action remanded for a new trial.

CASSODAY, C. J. I respectfully dissent from the decision of my brethren in this case. It is undisputed that the train contained eleven cars, including three coaches and a parlor car; that the train was crowded; that it reached Oregon about half past six o'clock in the evening; that the plaintiff rode in the smoking car, five or six seats back from the front door, and the witness Hanan was seated near him; that the cars were well lighted; that on approaching the station "Oregon!" was called out, and the train stopped; that when it stopped the conductor was at or near the rear end of the train; that he got off the train onto the platform at the front end of the parlor car,—that is to say, the second car from the smoker; that several people got off the train at that station; that the conductor walked upon the platform from the place where he got off to the rear end or middle of the smoker, and then

partly back,—in all from ninety to 120 feet; that he looked
to see whether everybody desiring to stop at that station had
got off; that when he felt pretty sure that they had he gave
the signal to the fireman.or engineer to go ahead, and the train
started; that immediately after the train started he got onto
the rear end of the smoker; that he then found two or three
men, including the plaintiff and Hanan, who wanted to get off
the train; that he then told them to wait a moment, and he
would stop the train; or, as Hanan states it, "Hold on, I will
stop the train;" that the conductor then stepped from the plat-
form into the car, and pulled the bell to stop the train. Can
it be fairly said that such facts tend to prove negligence on
the part of the conductor? Was he not justified in giving the
signal to start the train, when, so far as he could observe, all
the passengers who intended to get off had done so? If not,
how much longer was he required to wait before giving such
signal? Is he to be charged with negligence when he delayed
giving the signal until after he supposed, from appearances,
that all had left the train who desired to do so? True, the
defendant is a common carrier, and as such it owed a duty to
the plaintiff as a passenger at the time; but, in my judgment,
it did not require that the conductor should do more than the
undisputed evidence shows that he did do.

"To constitute actionable negligence, the defendant must
be guilty of some wrongful act or breach of positive duty to
the plaintiff." *Dowd v. C., M. & St. P. R. Co.* 84 Wis. 116.

Besides, it appears from the undisputed evidence that the
plaintiff walked down the steps of the car without stopping,
and stepped from the bottom step off onto the platform while
the car was in motion. True, he says that he first discovered
it was moving after he struck the platform, and that he did
not know it was moving when he left the step of the car. But
he was a man fifty years of age, and we must assume that he
had all his senses, and was a man of ordinary intelligence;

and hence, in my judgment, he knew, or ought to have known, that the car was in motion, when he stepped from it onto the platform. He was familiar with the station. He testified that nobody, that he was aware of, spoke to him; but he did not swear that he did not hear the conductor say, "Hold on, I will stop the train;" nor that he did not hear Hanan, who was five or six feet behind him, say, "Hold on, *John;* they will stop the train." To cast upon the defendant the burden of proving that the plaintiff did in fact know that the car was moving at the time, and that he did not hear what was so said for his benefit, would, in my judgment, be contrary to the well-settled rule of law, and practically do away with the defense of contributory negligence in such a case. *Davis v. C. & N. W. R. Co.* 18 Wis. 175; *Jewell v. C., St. P. & M. R. Co.* 54 Wis. 610; *Brown v. C., M. & St. P. R. Co.* 80 Wis. 162; *Shevlin v. Am. M. A. Asso.* 94 Wis. 183.