HOOKER v. BLAIR.

CARRIERS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

A passenger who, on hearing the brakeman call a station, and seeing him open the vestibule door, left his seat and went to the platform, believing from the jar of the train that it had stopped, and attempted to alight from the steps of the moving car, in the darkness, was guilty of contributory negligence, and the receivers of the road were not chargeable with negligence for announcing the station before the train arrived there, or had stopped.[1]

Error to Kent; Brown, J. Submitted October 15, 1915. (Docket No. 116.) Decided December 21, 1915.

Case by William W. Hooker against Frank W. Blair and others, as receivers of the Pere Marquette Railroad Company, for personal injuries. Judgment for plaintiff. Defendants bring error. Reversed.

*Bills, Parker, Shields & Brown* (*Charles E. Ward,* of counsel), for appellants.

*Smedley & Linsey* and *Charles G. Turner,* for appellee.

MOORE, J. This case arises out of an injury to the plaintiff while alighting from one of defendants' trains. Plaintiff's testimony on the trial was in substance:

"On the 29th day of September I was going to Englishville to work driving team. It was telephone work

[1] On carrier's duty to prevent passenger from leaving train while in motion, see note in 31 L. R. A. (N. S.) 625.

On negligence of passenger in getting on or off a moving train, see notes in 21 L. R. A. 354, 22 L. R. A. (N. S.) 741, L. R. A. 1915C 181.

On the assumption by passenger that car will stop at proper place for alighting, see notes in 2 L. R. A. (N. S.) 115, 9 L. R. A. (N. S.) 1113.

for the Citizens' Company." He took a seat in the middle of the smoking car. The train was a vestibuled train. "I had never ridden to Englishville before on this road. It was my first trip up there. Just before I got off I saw the brakeman going through the coach I was in. When he went through he announced the station: 'Englishville; Englishville.' He said this at the head end and at the rear end of the coach. As he went out the rear end of the coach he opened the coach door. * * *

"Q. As the brakeman went out, what, if anything, did you notice with reference to the train? .

"A. The train came to a halt. I thought it was stopped.

"Q. What did you notice with reference to it?

"A. Why, the jar of the train—the train, you can feel the jar of the train when it is stopping, when it is slack.

"Q. Where were you when you noticed that?

"A. I was in my seat.

"Q. How long did you remain in your seat after that?

"A. Oh, a very short time.

"Q. Then did you get up out of your seat?

"A. I got up out of my seat and walked to the door. * * *

"Q At the time that you got out of your seat, was the train in motion, or what did you think about the train being in motion?

"A. I thought the train had stopped. * * *

"Q. And when you got to the rear end of the coach did you see any of the trainmen?

"A. I saw the conductor.

"Q. And where was he standing?

"A. He was standing on the coach behind the smoker, next to the smoker.

"Q. Which way was he looking?

"A. Well he was faced towards me.

"Q. Looking towards you?

"A. Looking in that direction.

"Q. When you got to the platform, rear platform, of the smoker, what did you notice?

"A. I noticed the door; the vestibule door was open; the side door was open.

"*Q.* Where was the brakeman at that time?

"*A.* I didn't see him.  * * *

"*Q.* What did you do when you got to the platform?

"*A.* I walked down the steps.

"*Q.* Then what did you do?

"*A.* My last step was to the ground.

"*Q.* When you stepped to the ground, what did you find?

"*A.* I found I was in hard shape—in the cattle guard.

"*Q.* What did you find with reference to the train, whether or not the train was in motion when you stepped to the ground?

"*A.* I knew then the train was in motion, when I stepped off and was thrown. (Continuing:) It throwed me onto the cattle guard. There was no light there. The condition outside was very dark. It was a very dark night.

"*Q.* Could you observe, from anything you could see on the outside, whether the train was in motion?

"*A.* I could not. I couldn't see anything  * * *

"*Q.* What did the conductor say to you when he came out?

"*A.* He didn't say anything."

This appears in the cross-examination:

"*Q.* When you walked out there on the platform, you say the conductor was the only man you saw, and you looked for the brakeman and did not find him. Did you say anything to the conductor.

"*A.* No, sir.

"*Q.* Or he to you?

"*A.* No, sir.

"*Q.* You didn't say anything to anybody then?

"*A.* No, sir.

"*Q.* Walked off?

"*A.* Why, certainly, I just walked off."

Plaintiff further testified that when he came out of the car door of the smoker he did not see the brakeman on the steps of the car, and thought the brakeman was on the ground to assist passengers in getting off, and that for that reason he thought the train had stopped.

He says he saw the conductor on the platform of the ladies' coach, and therefore supposed that the brakeman was on the ground. He knew the brakeman customarily carried a lantern, but did not see the lantern of this brakeman outside as he stepped from the car. He looked for the brakeman on the ground, but did not see him. He also testified he had been told it was the custom for some one to remain on guard when the vestibule doors were opened, and that as the station had been called, and he had felt a jar which indicated to him the train had stopped, and the doors were open so that one could alight, and as he did not see the brakeman, that all these circumstances together justified him in alighting. The case was submitted to the jury. From a verdict and judgment in favor of the plaintiff, the case is brought here by writ of error.

There are four groups of assignments of error discussed by counsel, but the important one is whether a verdict should have been directed in favor of the defendants as requested. Counsel insists the action of the trial judge in submitting the case to the jury is justified by many cases cited by him, the important ones of which are *Burke* v. *Traction & Electric Co.*, 147 Mich. 172 (110 N. W. 524), *Walters* v. *Railway Co.*, 113 Wis. 367 (89 N. W. 140), *Louisville, etc., R. Co.* v. *Moore*, 150 Ky. 692 (150 S. W. 849), and *Bartle* v. *Railroad Co.*, 193 N. Y. 362 (85 N. E. 1091). A reference to these cases will show most of them to be distinguishable from the instant case.

*Burke* v. *Traction & Electric Co., supra*, was against a street railway company. It was said in the opinion:

"The principle of these cases has no application where the car is started when a passenger is alighting therefrom at the invitation, express or implied, of the carrier. In such a case—and this is such a case—it is, as above stated, negligence for the carrier to start the car."

In *Walters* v. *Railway Co.*, *supra*, the train had stopped, and it was claimed the train was started when the passenger was attempting to alight. In disposing of the case it was said:

"The queston of contributory negligence was also one for the jury. ·It is well settled that an adult who unnecessarily steps from a train which he knows to be in motion is guilty of contributory negligence as a matter of law. *Brown* v. *C., M. & St. P. R. Co.*, 80 Wis. 162 [49 N. W. 807]. But·in the present case the plaintiff testifies that he did not know the train was moving when he stepped off. While such a statement might well seem incredible if made 25 years ago, it is not so now. It is matter of common knowledge that vestibule trains, with improved couplers and running on a first-class roadbed, frequently start so noiselessly and imperceptibly as to attract no notice, especially when the outside darkness prevents the passenger from noticing the fact by the use of his eyes."

In *Louisville, etc., R. Co.* v. *Moore*, *supra*, the following appears in the opinion:

"Ordinarily a passenger, who is injured by stepping from a train while it is moving at a rate of speed that makes it probably unsafe for him to do so, would be held guilty of such negligence as would prevent a recovery. *Glascock* v. *C. N. O. & Tp. Ry. Co.*, 140 Ky. 720 [131 S. W. 779]; *Hewlett* v. *L. & N. R. R. Co.*, 15 Ky. Law Rep. 178; *Adams' Adm'r* v. *L. & N. R. R. Co.*, 82 Ky. 608. But if appellee, while a night passenger on appellant's train, was informed by one of the train employees that it had reached his destination, such information being attended by the lessening of the speed of the train, as if for the purpose of stopping, and the train porter, while the train was·still in motion, in his presence, stepped from it ahead of him, immediately after calling to him to get off, and appellee was induced thereby to step from the train in the belief that it had stopped, and by reason thereof fell and was injured, he was not guilty of negligence, unless, notwithstanding the direction from the porter to alight, he knew, or by the exercise of ordinary care might have discovered, that the train was still in motion, and that

it was, under the circumstances, dangerous for him to attempt to alight from it."

Certainly the above cases are not like the case we are considering. The case of *Bartle* v. *Railroad Co.,* *supra,* is more in point. In this case it appeared:

"The train consisted of a number of cars, and, being crowded, the party were compelled to go through two or three cars to the forward one, which was next to the engine, there being no baggage car on the train. It is in evidence that in the front portion of the car there were no lights, no trainman with lantern, and the curtains, or most of them, were pulled down; also, that there was no light on the rear of the engine; that the station at Chili was unlighted and closed at the time the train arrived; that it was a very dark night, and no objects could be seen when looking off from the front platform of the forward car."

The conditions were somewhat unlike the case before us, though there is language used in the opinion that justifies what is claimed for it by counsel.

In *Morris* v. *Railroad Co.,* 127 La. 446, 447 (53 South. 698, 31 L. R. A. [N. S.] 629), the following language appears:

"The train was still in motion. Plaintiff testified that it was in motion, but that he was not aware of it at the time. The question arises: Did it not devolve upon him to satisfy himself before alighting that the train was standing ready to permit passengers to alight? If a passenger, who has every reasonable opportunity to assure himself that the train is at full stop, fails to make inquiry, he cannot hold others liable for damages in case he alights while it is in motion and is hurt."

The case of *Mearns* v. *Railroad Co.,* 163 N. Y. 108 (57 N. E. 292), is much like the present case. The only difference is that the train was moving into a well-lighted station. In the opinion occurs the following:

"In the case of *Solomon* v. *Railway Co.,* 103 N. Y. 437, 442 [9 N. E. 430, 57 Am. Rep. 760], Andrews, J., in delivering the opinion of the court, says:

" 'It is, we think, the general rule of law, established by the decisions in this and other States, as claimed by the learned counsel for the respondent, that the boarding or alighting from a moving train is presumably and generally a negligent act *per se*, and that in order to rebut this presumption and justify a recovery for an injury sustained in getting on or off a moving train it must appear that the passenger was, by the act of the defendant, put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety.'

"Applying this rule to the facts under consideration, it is evident that there is a total absence of any act or direction of those having the charge of the train which interfered with the free agency of the plaintiff, or that in any manner diverted his attention. All that was done by the guard was to call out: 'All out; Jersey City; last stop!' This notice was given before the train had stopped, and this fact was well understood by the plaintiff. He knew it to be the usual notice given in advance of the arrival of the train at its stopping place, notifying the passengers that the train was nearing the station, in order that they might get ready to alight. He acted upon the notice leisurely, preparing himself to leave the train, gathering together his belongings, and then walked toward the front of the car, stopping and leaning against a partition for a time, waiting unquestionably for the train to arrive at and enter the station. No unusual situation was created. He was in no manner interfered with. As the car was entering the trainhouse the guard stepped into the vestibule and opened the door. He then stepped into the vestibule in front, as the plaintiff stepped out and descended the steps. There was nothing unusual in this. Nothing had been said or done that would lead the guard to suppose that the plaintiff did not understand the situation, or that he

was mistaken about the train having come to a stand. Ordinarily passengers have no difficulty in determining whether a train has stopped. They are usually as sensitive to a moving car as any guard or conductor could be, and heretofore it has never been understood to be the duty of a railroad company to expressly warn its passengers of the starting or of the stopping of the train. This was not a rapid transit or elevated railroad, in which a different custom may prevail. If such a duty is now imposed upon railroad companies, their burden will be materially increased and they cannot properly open the door of a car for the exit of passengers until it has actually come to a stop."

The last-named case was before the Federal court in 139 Fed. 543 (71 C. C. A. 331). We quote from the opinion:

"The contention of the plaintiff is, in effect, that when the porter, or guard, made the statement, 'Jersey City; last stop; all out!' and followed it by opening the vestibule door, it amounted to a positive assurance by the defendant that the car had stopped, and was an 'invitation' to the plaintiff to alight, accompanied with a guaranty that he could do so with safety. It is argued that it was the duty of the porter to know whether the car had stopped or not; if he did not know, it was negligence. If, on the other hand, he did know, he should have warned the plaintiff not to get off, and his failure to do so was negligence. We do not think this contention can be maintained. It places upon carriers obligations which practically make them insurers of the lives and limbs of their passengers. It lays down a new, a stringent, and an impracticable rule, which will extend their liability far beyond its present limit, and will, in effect, render them liable for injuries sustained by passengers in alighting from moving trains, whether made up of vestibuled or ordinary coaches, whenever a guard who has announced a station and opened the car door, fails to inform them that the train is in motion, and the party injured testifies that he supposed that the train was at a standstill. We prefer to take the view of the facts entertained by the court of appeals. The statement of the porter was not an 'invitation' to alight, but was the usual an-

nouncement of a fact of interest to the passengers, namely, that they had reached or were about to reach the end of their journey. The opening of the door of the vestibule did not warrant the inference that the car had stopped, but was only another act to facilitate the rapid and orderly egress of the passengers, after the train had stopped. Even though it be assumed that the porter knew that the train was in motion and that he saw the passenger (plaintiff) step down from the platform, this falls far short of showing that he knew or ought to have known that the plaintiff intended to step off. It is so common for eager passengers in approaching a station to descend to the last step, in order to avail themselves of the first opportunity to alight, that a guard who called out to a passenger in such a situation, 'Don't get off; the train has not stopped,' would probably be denounced as an impertinent interloper. We cannot resist the conclusion that the deplorable accident which befell the plaintiff was attributable to his own lack of caution and was not due to the negligence of the defendant.

"We agree with the supreme court of Massachusetts when they say in a case very similar upon the facts:

" 'Assuming that the action of the brakeman in calling the station and fastening back the door was to be regarded as an invitation, it was clearly not an invitation to alight from a moving train, but from the train after it had come to a stop. It did not authorize the plaintiff to attempt to get off from the train when in motion. But we do not think the action of the brakeman can, as a matter of law, be regarded as an invitation. It was, at the most, simply an announcement that the train was near the station, and would presently stop, and was given in order that passengers intending to alight there might prepare themselves to do so when the train stopped.' *England* v. *B. & M. R.*, 153 Mass. 490 (27 N. E. 1)."

See, also, *England* v. *Railroad*, 153 Mass. 490 (27 N. E. 1), and *Baltimore, etc., R. Co.* v. *Mullen*, 217 Ill. 203 (75 N. E. 474, 2 L. R. A. [N. S.] 115, 3 Am. & Eng. Ann. Cas. 1015), where the last-named case is referred to.

The questions presented in this case are not new in this State. In *Mitchell* v. *Railway Co.*, 51 Mich.

236 (16 N. W. 388, 47 Am. Rep. 566), the station had been called, and the plaintiff supposed the train had stopped, and in alighting was hurt. The following language was used by Justice CAMPBELL:

"It is also well settled that negligence cannot be presumed where nothing is done out of the usual course of business, unless that course itself is improper. There must be some special circumstances calling for more particular care or caution, in order to make a liability. _Stephenson_ v. _G. T. R. Co.,_ 34 Mich. 323; _G. R. & Indiana R. R._ v. _Judson,_ 34 Mich. 506; _Flint & P. M. Ry._ v. _Stark,_ 38 Mich. 714; _Downey_ v. _Hendrie,_ 46 Mich. 498 [9 N. W. 828, 41 Am. Rep. 177]; _Mich. Cent. R. R._ v. _Coleman,_ 28 Mich. 440; _Haas_ v. _G. R. & Ind. R. R.,_ 47 Mich. 401 [11 N. W. 216]; _Chicago & N. W. Ry. Co._ v. _Smith,_ 46 Mich. 504 [9 N. W. 830, 41 Am. Rep. 177]; _Brown_ v. _Congress & Baker St. Ry.,_ 49 Mich. 153 [13 N. W. 494]; _Henry_ v. _Lake Shore & M. S. Ry.,_ 49 Mich. 495 [13 N. W. 832].

"The only cause of the mischief, leaving defendant's carefulness or negligence out of view, was her mistaken supposition that the cars had stopped for the station, and that she should therefore get out. There was nothing at the spot to indicate a landing place, and there was, at the proper place, a short distance further on, a building and platform appropriate and used for that purpose. The stoppage of the cars was required by statute, as well as by usage, as a precaution against collisions. The calling of the station was not shown to have been out of the usual course, and from the distance mentioned we can hardly conceive it should have been delayed. No one representing the company, whether conductor or brakeman, is shown to have known or suspected that plaintiff had put herself in peril or left her place. Nothing is shown which put them in fault for not knowing this. * * *

"The company, as held in some of the cases above cited, cannot be expected to treat its passengers as children, or to put them under restraint. Passengers must take the responsibility of informing themselves concerning the everyday incidents of railway traveling, and the company could not do business on any other basis."

See, also, *Bradley* v. *Railway Co.*, 107 Mich. 243 (65 N. W. 102) ; *Lake Shore, etc., R. Co.* v. *Bangs*, 47 Mich. 470 (11 N. W. 276) ; *Minock* v. *Railway Co.*, 97 Mich. 425 (56 N. W. 780).

The accident is greatly to be regretted, but we do not think plaintiff did what a reasonably prudent man should have done before leaving the train, nor do we think negligence on the part of the railroad was shown. Upon both grounds a verdict should have been directed for defendants.

Judgment is reversed, and new trial ordered.

BROOKE, C. J., and PERSON, KUHN, STONE, OS-TRANDER, BIRD, and STEERE, JJ., concurred.