## Frank N. Wood, Appellant, v. Illinois Central Railroad Company, Appellee.

### Gen. No. 21,349.

1. CARRIERS, § 476*—*when evidence insufficient to show negligence of defendant.* Where a passenger on a railway train in the nighttime stepped on the platform of the car after the brakeman had announced the station at which he wished to alight and, seeing a train running on a parallel track in the same direction and at the same speed as his own, supposed that both trains had reached the station and were standing still, and stepped off the train into the darkness at a point where there were no lights, 800 feet from the station, *held*, in an action for an injury thereby sustained, that the evidence presented a question for the jury as to the defendant's negligence, and justified a verdict for the defendant.

2. CARRIERS, § 476*—*when evidence sufficient to show contributory negligence of passenger alighting from train.* Evidence that a passenger on a train at nighttime who, from the fact that another train on a parallel track was moving at the same rate of speed and in the same direction as the one on which he was riding, supposed that he had reached the station and that the trains were standing still, stepped off into the darkness at a point 800 feet from the station without looking for the usual sign of a station and relying on his absence of sense of motion of the train, *held* sufficient to support a finding that he was not in the exercise of reasonable care for his own safety.

3. CARRIERS—*what does not constitute invitation to alight from train.* In an action by a passenger on a railway train for injuries resulting from his alighting from the train before reaching his station, *held* that the mere announcement of the station by the brakeman was not an invitation to alight.

4. CARRIERS, § 362*—*when duty to maintain lights does not exist.* A railway company held under no obligation to maintain lights at a distance 800 feet from its passenger station.

Appeal from the Superior Court of Cook county; the Hon. ED-WARD M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed October 10, 1916. Rehearing denied October 23, 1916. Petition for *certiorari* dismissed.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

FRANCIS W. WALKER and HARRY S. MECARTNEY, for appellant.

CALHOUN, LYFORD & SHEEAN, for appellee; VERNON W. FOSTER and JOHN G. DRENNAN, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This case comes to this court for the third time [167 Ill. App. 644; 185 Ill. App. 180], each time with a verdict for defendant, once on the court's instruction, and twice after submission to a jury. It is unnecessary to refer to our previous decisions in passing upon the questions now presented. The principal contentions of appellant are that there should have been a directed verdict for the plaintiff, and that the verdict is against the manifest weight of the evidence.

Wood, the plaintiff and appellant, was injured while endeavoring to alight on a dark night from a moving passenger train of the Michigan Central Railroad at one of defendant's stations in Chicago, at which both defendant's local or suburban trains and its through trains, as well as the through trains of said Michigan Central, customarily stopped, a fact with which plaintiff was familiar.

The negligence charged is failure under the circumstances to warn or assist the plaintiff in alighting, and to maintain the alighting places with a platform, and to have the place sufficiently lighted for passengers to alight in safety.

We think the evidence bearing on the issues taken on these charges required submission of the case to the jury and that its verdict was not against the weight of the evidence.

The evidence shows that on approaching the station the brakeman passed through the car as usual and announced the station; that shortly afterwards plaintiff went to the rear platform of his car and saw one of

defendant's suburban trains, which was going north on parallel tracks in the same direction as his train and slowing down preparatory to stopping so as to permit the passengers alighting from the Michigan Central train to pass to the station in front of the suburban train. From the fact that at that particular juncture the two trains were moving at the same speed plaintiff supposed that his train had come to a stop and stepped off into darkness receiving the injury complained of. He testified: "When I saw the suburban train standing still, I did not think about it not being at the suburban station. I was impressed with the fact that the train was at a standstill  *  *  *  and did not stop to analyze the situation.  *  *  *  I had lost all sense of motion of the train and stepped out onto the platform, when I concluded the train had stopped.  *  *  *  I saw the Illinois suburban train, I assumed at a standstill, opposite our train  *  *  *  it was apparently at the same place; then I stepped off. I could not see the ground at all  *  *  *  I think I did not look up along the line of the train, up in the air, to any extent, because I was so sure the train had stopped."

There was some controversy as to the precise point at which plaintiff stepped off, but the evidence pretty conclusively shows that it was fully 800 feet south of where he would have alighted had he remained on the car until it stopped, and 300 feet south of where the rear car of his train of nine cars stopped or usually stopped, and that immediately about the station and the platform where the trains stopped there was adequate light furnished from the station and street electric lamps, some of which plaintiff could have seen had he looked in the direction his train was going. There was sufficient controversy as to the precise point at which plaintiff stepped off to warrant submission of the fact to the jury as bearing on the main issues. The evidence amply supports a finding of the distance

above stated, and that there was no negligence in a failure either to maintain lights or platforms at such a distance from the usual stopping places at that station, or to give any special warning in such circumstances, and that the plaintiff in stepping off into darkness without taking the precaution to look for the usual signs of the station instead of relying on the absence of the sense of motion and his observation of another train, did not exercise reasonable care for his own safety.

The coincident arrival of trains at stations in a great city like Chicago is a common, if not an every day, incident with which plaintiff was familiar. In a similar case where there was a mistaken supposition by a passenger that the cars had stopped and that she should therefore get out, the court said: "Passengers must take the responsibility of informing themselves concerning the everyday incidents of railway traveling, and the company could not do business on any other basis." (*Mitchell v. Chicago & G. T. Ry. Co.*, 51 Mich. 236.) The court also said what is applicable to the facts here: "It is also well settled that negligence cannot be presumed where nothing is done out of the usual course of business, unless that course itself is improper. There must be some special circumstances calling for more particular care or caution, in order to make a liability." (See also, *Hooker v. Blair* [Mich.] 155 N. W. Rep. 364.)

There was nothing unusual in the circumstances of the case at bar. The mere announcement of the station was not an invitation to alight either from the train while it was moving or into darkness several hundred feet away from the station or the point where the trains stopped (*Mearns v. Central R. Co.*, 163 N. Y. 108; 139 Fed. 543, 71 C. C. A. 331), and the circumstances did not seem to call for anything more than the mere announcement of the station. We know of no legal obligation on the part of the defendant company

to maintain lights at such a distance from the place where trains stopped for passengers to alight, nor to apprise passengers of usual conditions in the absence of anything said or done to induce them to believe to the contrary. We cannot, therefore, disturb the jury's findings of fact.

Nor do we find reversible error in the given instructions, the criticisms of which seem to us more technical than substantial. Some of them have been approved by our Supreme Court, as pointed out in appellee's brief, and were not inapplicable to the peculiar facts and circumstances of this case on which two juries have twice passed adversely to appellant's claims. Under such circumstances, especially when the verdict cannot reasonably be deemed contrary to the evidence, we would be reluctant to remand the case for a fourth trial unless the instructions were manifestly prejudicial or misleading, and we do not think they were.

*Affirmed.*