THE BALTIMORE AND OHIO SOUTHWESTERN RAILROAD CO.

*v.*

JOHN MULLEN.

*Opinion filed October 24, 1905.*

1. RAILROADS—*what may be considered by jury in determining whether passenger was negligent.* In determining whether a passenger was negligent in getting off of a moving train, the facts that it was dark and that the passenger felt no motion of the train and believed it had stopped, and that he got off at the place pointed out to him by the conductor or brakeman as the depot, are proper to be considered by the jury.

2. SAME—*when alighting from moving train is not negligence per se.* Alighting from a moving train in the darkness at the direction of the conductor or brakeman, or in the belief that the train had come to a stop, is not negligence *per se* on the part of the passenger so alighting.

3. SAME—*company must give passenger reasonable opportunity to alight in safety.* It is part of the duty which a railroad company owes to a passenger to give him a reasonable opportunity to alight from the train in safety at the end of his journey.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Cass county; the Hon. HARRY HIGBEE, Judge, presiding.

This is an action in case, brought in the circuit court of Cass county in March, 1902, by the appellee against the appellant company to recover damages for a personal injury. To the second amended declaration the plea of general issue was filed. The cause was tried before the court and a jury, and resulted in a verdict and judgment in favor of appellee for the sum of $1730.00. An appeal was taken to the Appellate Court, which has affirmed the judgment of the circuit court; and the present appeal is prosecuted from such judgment of affirmance.

The following extract from the opinion of the Appellate Court, deciding this case, sets forth the material facts, to-wit:

"This suit was before this court at a former term, and the judgment then appealed from was reversed because of errors in the instructions. (108 Ill. App. 637). Upon remandment the cause was again tried, resulting in a judgment for the plaintiff for $1730.00. The second trial was had upon the second and third counts of the declaration only, which charge, in substance, that the defendant had negligent and incompetent servants in charge of its train from St. Louis to Flora, Illinois; that said servants opened the vestibule doors of the coach in which plaintiff was riding, and called the station of Flora; that plaintiff then went out on the vestibule platform; that the conductor and brakeman were there, and one of them informed him the depot was 'right there,' indicating a point directly opposite where the train then was, and thus induced in his mind the belief, that the train had stopped at the station; that it was in the night time, and so dark plaintiff could not distinguish any object, and by means of the false information, thus given him by the conductor or brakeman, he was induced to believe and did believe, that the train had stopped; that he attempted to alight from said train, but that it was not at the place indicated, and had not stopped as plaintiff had been erroneously led to believe, and, in attempting to alight, he was drawn under the wheels and injured.

"On the morning of the accident, which occurred at about 4:35 o'clock, the appellee, a farmer, about sixty-eight years of age, was a passenger upon one of appellant's trains for the purpose of being carried from East St. Louis to Flora, Illinois, where he intended changing cars to another branch of appellant's road. He testifies that, when the conductor took up his ticket, he informed the conductor that he had had but little sleep for two nights, and asked to be waked at Flora; that, as the train neared Flora, the brakeman came into the car and called the name of the station, whereupon appellee awoke, arose, put on his overcoat, took his lunch basket on his arm, and went to the rear platform of the

coach; that the conductor and brakeman were standing on the platform of the adjoining coach; that the vestibule doors were open; that he asked them where the depot was, and that one of them replied, 'right there,' and pointed to the place where he afterwards got off; that said answer, and the fact, that he did not feel the motion of the train, led him to believe that the train had stopped; that it was so dark he was unable to see, whether or not it had; that he then stepped off, holding on to the railing as he did so, and was thrown under the wheels of the car. After appellee's wounds were dressed, the agent of appellant procured from him a written statement as to how the accident occurred, which was introduced in evidence by appellant, and tends to corroborate appellee's testimony.

"The evidence also shows that, when the train approached Flora from the west, it first stopped at a point about two hundred feet west of the crossing of the track of the main line of the road with that of what was called the Springfield division running north and south, and then proceeded to the depot, which was located east of the crossing, in the angle formed by the main and Springfield tracks, at the rate of not to exceed five miles an hour. After the accident, appellee was found lying near the main track about forty feet west of the crossing. His hand was injured to such an extent that amputation was necessary. The conductor and brakeman both deny, that they were at the place where appellee testifies they were, when the accident occurred, or that either of them made any statement to him as to the location of the depot, or that they saw him get off. The brakeman admits that he awoke appellee before the train stopped for the crossing, and told him that the train was approaching Flora, and that appellee then got up, stepped into the aisle, and put on his overcoat, but denies that he saw him on the train thereafter, or that he called the station until after making the stop at the crossing. The evidence tends to show that there were a number of electric and other

lights burning at and within the depot and other buildings in the vicinity of where the accident occurred, and that there were gas lights burning in the vestibule, through which appellee left the car."

HENRY PHILLIPS, and SHUTT, GRAHAM & GRAHAM, (EDWARD BARTON, of counsel,) for appellant.

MILLS & McCLURE, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon the trial below at the close of the plaintiff's testimony, the defendant asked the court to give the jury a written instruction to find the defendant not guilty, which was refused and exception was taken. At the close of all the testimony, defendant's counsel again asked of the court a written instruction to the jury to find the defendant not guilty, which was also refused and exception taken. The refusal of the court to instruct the jury to find for the defendant raises the question, whether there is any evidence, tending to sustain the cause of action set up in the declaration.

It is insisted by the appellant, that the appellee was guilty of contributory negligence in attempting to alight from the train while it was in motion. This court has held in some cases that it is negligence for a passenger to get off a train, of which the motive power is steam, while the cars are in motion. (*Cicero and Proviso Street Railway Co.* v. *Meixner,* 160 Ill. 320). It will generally be found, however, upon an examination of such cases, that the passenger, thus alighting from a steam car when in motion, was aware, at the time, that it was in motion. In other cases, it has been held that the question, whether or not the alighting from a steam car, which is in motion, constitutes of itself contributory negligence, is a question of fact to be determined by the jury, even

where the passenger knowingly and intentionally alights from such moving train. Thus, in *Chicago and Alton Railroad Co. v. Byrum,* 153 Ill. 131, this court said (p. 137): "Whether or not appellee was guilty of such contributory negligence in alighting from a moving train, as would bar a recovery, was a question of fact, to be determined by the jury under all the attendant and surrounding circumstances. * * * It was the duty of appellant to stop its train a reasonable length of time at Elkhart to allow appellee, in the exercise of ordinary care and diligence, to alight therefrom with safety, and, if appellant failed in this duty, and, by reason thereof, appellee was injured while in the exercise of ordinary care and caution, appellant would be liable." In *Chicago and Eastern Illinois Railroad Co. v. Storment,* 190 Ill. 42, it was said (p. 46): "The main contention of the defendant was that the plaintiff was not entitled to recover at all, because the train was in motion when she alighted from the same. This view of the law was erroneous, and the instructions, so far as they announced such erroneous view, were properly modified by the court before being given to the jury." In *Chicago and Alton Railroad Co. v. Gore,* 202 Ill. 188, it was said (p. 192): "It is so far within the scope of the authority of a conductor of a railway train to advise and direct passengers in the matter of boarding the train, that an attempt to step on a moving train in compliance with such advice or direction cannot be declared, as matter of law, to be negligence that will bar recovery, unless the danger is so open and obvious that only a reckless man would encounter it. * * * Whether or not the appellee, in attempting to get upon the car while the same was in motion, on the occasion in question, was guilty of such contributory negligence as would bar a recovery, was a question of fact to be determined by the jury in view of all the attendant and surrounding circumstances." The considerations, which apply to getting on a moving train, are also applicable to the matter of getting off a train, which is in motion.

Without attempting to distinguish between cases, which seem to hold, that it is negligence as matter of law to attempt to alight from the car of a train, propelled by steam, while it is in motion, and those, which hold that the question, whether such attempt constitutes contributory negligence or not, is a question of fact for the jury, it is sufficient, for the purposes of the case at bar, to say that, where a passenger alights from a train at a particular point upon the invitation of the conductor, or brakeman, or other employe on board the train, or where such passenger alights from the train under the belief that it is not in motion, and the circumstances show that there is reasonable ground for such belief, then these facts may be taken into consideration by the jury in determining whether the plaintiff has or has not been guilty of contributory negligence.

In *Chicago and Alton Railroad Co.* v. *Winters,* 175 Ill. 293, it was held that the direction, invitation or assurance of safety, given by a servant of the company, may so qualify a plaintiff's act as to relieve it of the quality of negligence which it would otherwise have; and it was there said: "One who obeys the instructions or directions of another, upon whose assurance he has a right to rely, cannot be charged with contributory negligence at the instance of such other, in an action for injuries received in attempting to follow out the instructions." As was said in *Chicago and Alton Railroad Co.* v. *Winters, supra,* in cases, where the facts showed that a passenger dismounted from a train at a place of danger and was injured in so doing, and where it was held that such passenger was not entitled to recover damages for such injuries from the railroad company, it appeared that such movement of the passenger in alighting from the train was not made by any direction or invitation from the conductor of the train, or other servant of the company. In 5 American and English Encyclopedia of Law, (2d ed. p. 653,) it is said: "The direction of the conductor of a train to an intending passenger as to his method of getting upon the

train is clearly within the scope of his authority, and, in complying with this direction, the passenger is not guilty of negligence, unless he exposes himself to open and apparent danger." The same rule applies as to alighting from a train. (Ibid. pp. 657-660; *Chicago and Northwestern Railway Co. v. Scates,* 90 Ill. 586).

In *Chicago and Northwestern Railway Co. v. Scates, supra,* it was said (p. 591) : "Where an action was brought to recover for injuries received by a party, who attempted to get off a train while in motion, it was held, that a passenger has no right to get off a train of cars in motion, and, if he undertakes to do so without the knowledge or direction of any employe of the company, it is at his peril, and he must bear the consequences, however disastrous. * * * If it is to be regarded dangerous for a passenger to get off a train of cars in motion, it is likewise dangerous to get on a train when in motion. If a person is guilty of such negligence in getting off a train of cars in motion, as will preclude a recovery for an injury received, upon the same principle and for the same reason a person injured in getting on a train of cars in motion, and in consequence thereof, should be regarded guilty of such negligence, as will prevent a recovery." (*Illinois Central Railroad Co. v. Slatton,* 54 Ill. 133; *Ohio and Mississippi Railway Co. v. Stratton,* 78 id. 88; *Illinois Central Railroad Co. v. Chambers,* 71 id. 519). On the contrary, the alighting of a passenger from a train thus in motion is not at his peril, if he does so with the knowledge or direction of an employe of the company.

There are also cases, where the facts show that the party, alighting from a moving train, had reason to believe that the train had stopped. Where such belief has a reasonable basis in the facts and circumstances, surrounding the party at the time of the accident, the act of alighting does not, in and of itself, amount to negligence as matter of law. (*Hoehn v. Chicago, Peoria and St. Louis Railway Co.* 152 Ill. 223; *England v. Boston and Maine Railroad Co.* 153 Mass. 490;

*Pittsburg, C., C. & St. L. Ry. Co.* v. *Miller,* 33 Ind. App. 128; *Minock* v. *Detroit, G. & M. R. Co.* 97 Mich. 425).

In the case at bar, the appellee, a man sixty-seven years of age, had been traveling for two nights, and was wearied and tired, and so stated to the brakeman when he took his seat in the car, asking the brakeman to awaken him when they reached Flora. There was a railroad crossing before the train arrived in Flora. The train first stopped about two hundred feet west of this crossing. Before the crossing was reached, the brakeman awoke appellee, and, as he states, announced that the next station was Flora. The depot, where appellee intended to alight, was a considerable distance east of this railroad crossing. Appellee arose from his sleep, and from his seat, and put on his overcoat, and took his lunch basket on his arm after the announcement thus made to him by the brakeman, and went to the rear platform of the car, where he found the vestibule doors open. He says, that the conductor and the brakeman were both standing on the platform of the rear car next to the one, in which he was riding. He says that he asked them, where the depot was, and one of them said, pointing to a place directly opposite where they then were, "right there." His contention is that, in view of what was thus said to him by either the brakeman or the conductor, he thought he had reached the depot, and was at the proper place for alighting. The train had stopped at the crossing, and was evidently just moving beyond the crossing, and was at that time a considerable distance west of the depot. In other words, it was not a fact, that the depot was "right there," or directly opposite the point where he alighted. There is some conflict in the testimony as to whether the name of the station, Flora, was called after the crossing was passed, or before it was reached. The testimony very strongly tends to show, however, that the name of the station was not called after the first announcement to the appellee when he was awakened from his sleep.

Authorities are produced by the appellant, holding that the fact, that the name of a station is called, and the further fact, that the vestibule doors of the car have been opened, do not of themselves constitute an invitation to the passenger to alight.  As is said by the Supreme Court of Massachusetts in *England* v. *Boston and Maine Railroad Co.* 153 Mass. 490: "Assuming that the action of the brakeman in calling the station and fastening back the door was to be regarded as an invitation, it was clearly not an invitation to alight from a moving train, but from the train after it had come to a stop."  In the present case, if there had been nothing more than the calling of the name of the station, or the fastening back of the vestibule doors, it could not be said that appellee was invited by any employe of the company to alight at that place.  But when these circumstances are taken into consideration in connection with the fact, that the appellee was told, when he went on the platform, by the conductor, or the brakeman, that the depot, where he had to alight, was "right there" at the place where he then was, and in connection with the further facts, that it was a dark night and had been raining, and that appellee, wearied and worn with long journeying, had just awakened from sleep at the early hour of four o'clock in the morning in the month of November, it cannot be said that it was error to submit to the jury, as a question of fact, whether or not the appellee was guilty of contributory negligence in attempting to alight at the point where he did alight.  Whether there was light enough from a restaurant, or other places near by, to enable appellee to see whether the train was moving or not, and where he was stepping when he alighted, was a question of fact submitted to the jury under the instructions.

In *McNulta* v. *Ensch,* 134 Ill. 46, it was held that, in case the conductor announces a station, at which his train is not bound to stop, just before the same is reached, and if, following such announcement, the train actually does stop at the station platform, a passenger for such station would be

justified in presuming it was for the purpose of discharging him there, and in proceeding to get off; and, if while it is so stopped, and with due promptness and care, the passenger attempts to get off, and is thrown down and injured by the starting up of the train, that presumption would become conclusive on the company; and that, where the ordinary signal is given on approaching a station, and it is announced in the usual manner by the brakeman or conductor, so as to lead a passenger to believe the train was going to stop at such station, and it does stop there, the company cannot avoid liability to the passenger for an injury, caused by the train starting before he has time to get off, by showing those in charge of the train intended to go on further before discharging passengers, of which no notice was given. In the case at bar, if notice was given to the appellee that the next station, at which the car would stop, was Flora, and, after such notice was given, the car did actually stop at the cross-. ing in question before the depot was reached, the appellee had a right to suppose that the stoppage of the car was at the proper place for him to get off. The evidence tends to show that the appellee had no knowledge, that the train would stop at a railroad crossing before it reached the depot, and, then after such stoppage, would move on again, and stop at the depot.

In *Chicago and Alton Railroad Co.* v. *Arnol,* 144 Ill. 261, it was said by this court as follows (p. 268) : "In this country it is the almost universal practice to announce the station, which the train is approaching, before it is reached, and while the train is still in motion. And it is universally understood that such announcement is intended as notice to passengers, without warning to the contrary, that the next stop of the train will be at the station announced. The purpose is understood to be, to enable the passengers intending to alight at that station to be ready to leave the cars promptly, without undue haste or inconvenience to themselves or unnecessary delay of the train. * * * If the

conduct of appellant's servants, and their management of the train, amounted to an invitation to then alight, and would be so understood and acted upon by reasonable and prudent persons, and appellee, acting in good faith upon such invitation, arose, upon the train coming to a standstill, for that purpose, the jury would be justified in finding that she was in the exercise of ordinary care for her own safety. If she, by reason of such apparent invitation, was placed in peril from the farther movement of the train, the duty at once arose on the part of appellant to stop its train a sufficient length of time to permit her to leave it in safety, or to warn her of the danger in time to avert injury. * * * The duty of the carrier was to be measured by the peril to the passenger, whom it had accepted and undertaken to safely carry, and who had been induced by the conduct of its servants to assume a position of danger."

In *Ward* v. *Chicago and Northwestern Railway Co.* 165 Ill. 462, it was held that a railroad company, having provided its stations with platforms, must use due care in stopping its coaches, so as to afford passengers an opportunity to safely alight thereon, particularly after its servants have announced that the next stop would be at a station; and it was also there held that a railroad passenger, who is justified by the conduct of the servants of the road in alighting from a train, and who, while exercising due care, is injured by reason of the carrier's negligence in omitting to provide a safe place to alight, may recover for the injuries so received.

There is a direct conflict between the testimony of the appellee, and the testimony of the conductor and brakeman, as to what occurred just before the appellee alighted from the train. The conductor and brakeman deny that they were present, and saw the appellee when he alighted. They also deny that they heard him ask where the depot was, and deny that they pointed to the place opposite where he was, and said to him, in answer to his question, "right there." The acci-

dent occurred at about 4:35 in the morning. At one o'clock of the same day agents or employes of the appellant went to the appellee, while he was yet suffering from his injury and sitting upon the edge of his bed, and asked him to make a written statement as to how the accident occurred. A stenographer took down his statement, and wrote it up, and, about three o'clock in the afternoon of that day, it was presented to him, and signed by him in the presence of two witnesses. This statement was introduced in evidence upon the trial of the case by the appellant, and not by the appellee. In this statement appellee says: "In the first place I was laying down in the train trying to sleep. I asked the conductor to wake me up when I reached Flora. I told him I did not sleep any last two nights. When I got there, he woke me up, and I got on my overcoat in a hurry, and picked up my lunch basket. I followed out of the car the brakeman and conductor at the rear end of car. I asked the brakeman standing right there, as I went through the coach, and when I had hold of the handles going down the steps, 'Where is the depot?' He said, 'Right there.' I also saw the conductor at the same time. He was not far from the end of the car. I started to go down the steps. I thought the train was stopped, as I could not feel any jar. I was going down the steps, when on the last step I stepped to the ground, or aimed to step there. The first thing I knew I was struck somewhere. I was close up to the rail, and tried to get away from it. I had enough sense to try to get away from it. I was sensible all the time. I tried to get up, but could not. When I got up, I saw that my hand was torn and mashed, and grabbed it with my other hand. I hold the company at fault, as the conductor ought to have told me that the train had not stopped when he saw me going down the steps. As I fell, I heard some one holler: 'The train caught him.' I think I heard some one holler; whether it was the brakeman or conductor I could not tell. I hold the company at fault as I was in a strange place, and they ought to have hollered

or not let me go." This statement, thus made a few hours after the accident happened, was a part of the appellant's own evidence. This statement confirms the testimony of the appellee, as given upon the trial of the cause. In *American Hoist and Derrick Co.* v. *Hall,* 208 Ill. 597, it was said: "Appellant voluntarily put appellee upon the witness stand, and made him its own witness, thereby vouching for his credibility, and, while it is true it was not bound by his conclusions, and might contradict him by other witnesses, yet it could not impeach him." (*Mitchell* v. *Sawyer,* 115 Ill. 650; *Bowman* v. *Ash,* 143 id. 649). In view of the introduction of this statement, confirming the testimony of the appellee, it cannot be said that there was not evidence, justifying the jury in coming to the conclusion that the appellee was induced to alight by the invitation of the appellant's employes, and that he had reasonable ground for believing that he was at the proper place for alighting.

As to the question of the negligence of the appellant, it is clear that, if the conductor or the brakeman, or both of them, stood on the platform and permitted the appellee to alight at the hour, and under the circumstances already stated, and induced him to believe that he was alighting at the depot, then the company was certainly guilty of such negligence as authorizes a recovery against it. The appellee was a pasenger upon the appellant's train, and the implied contract with him to carry him safely necessarily included the furnishing of reasonable opportunity to alight from the train safely at the end of his journey. (*Chicago and Alton Railroad Co.* v. *Arnol, supra*).

Much criticism is made by appellant's counsel upon the instructions given for the appellee, upon the modification of instructions asked by appellant, and the giving of such instructions as modified, and upon the refusal of certain instructions asked by the appellant. It would swell this opinion to an inordinate length to attempt to discuss all these criticisms in regard to the instructions. We have examined them

all carefully, and are of the opinion that those given announced views in accordance with the principles hereinbefore discussed, and those refused announced views in opposition to the rules here announced. This being so, there was no such error in the giving, modification or refusal of instructions, as to justify a reversal of the case.

Complaint is made of some of the remarks made by counsel for appellee in his argument to the jury. Upon this subject we concur in the following view, expressed by the Appellate Court in their opinion deciding this case, to-wit: "It is urged that the judgment should be reversed because of improper remarks of counsel for appellee in their opening statement, and closing argument. While a number of the remarks referred to were more or less objectionable and improper, we do not think they were so seriously so, as to have affected the verdict. Objections to most of them were sustained by the trial judge, who afterwards approved the verdict."

The judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*