Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company v. Stefan Puszdrakiewicz.

Gen. No. 12,455.

1. NEGLIGENCE—*charge of, will not be sustained where injury could not have been avoided consistently with the practical operation of the road.* One injured by the backing of a train upon him cannot sustain a charge of negligence against the road where it does not appear that the company had notice or warning that such person was upon the track sufficiently long before the injury to form an intelligent opinion as to how the injury might be avoided and apply the means.

2. CONTRIBUTORY NEGLIGENCE—*when person undertaking to cross railroad tracks guilty of, as a matter of law.* A person who undertakes to cross railroad tracks when the crossing gates are down and the bell of the approaching train is ringing, does so at his peril and is not relieved of a charge of contributory negligence

by the fact that he is encouraged in his action by the words and °
motions of the gateman.

Action in case for personal injuries. Appeal from the Superior
Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presid-
ing. Heard in the Branch Appellate Court at the October term,
1905. Reversed and remanded. Opinion filed November 7, 1906.

Statement by the Court. Appellee sued to recover °
for personal injuries occasioned by having been struck
and run over by a train of the Chicago, Milwaukee
& St. Paul Railway Company at the May street cross-
ing of appellant's railway tracks in Chicago.

May street extends north and south and is crossed
by two of appellant's main tracks running east and
west, the southern of which is used by east-bound
trains and the other by those bound west. There are
also two side tracks south and three just north of the
main tracks, all of which cross the street. There are
crossing gates on each side of these tracks which are
operated from a high tower east of the street near the
north gate.

Appellee was a picture frame polisher employed at
a place on Lake street near May, south of the said
railway crossing. He lived north of the tracks and
was in the habit of passing over the crossing every
night and morning.

The accident occurred shortly after the close of the
day's work upon April 9th. Appellee quit work about
5:30 P. M. and started toward home walking north on
the west side of May street. As he approached the
crossing the gates went down, but appellee apparently
after waiting a few minutes, went under or around the
west arm of the lowered gate which extended over the
sidewalk. The distance from the gate to the center of
the east-bound track which, it is said appellee had
reached when struck, was about sixty-three feet. At
this time a regular coach train of nine cars operated by
the Chicago, Milwaukee & St. Paul Railway Company
was backing east upon the east-bound or southern of

the two main tracks which was nearest to appellee as he approached. The view of this was obstructed by a switchman's shanty and by a "string" of freight cars standing on the second of the two switch tracks between the south gate and the main track and on the west side of and extending up to the west sidewalk and on appellee's left as he approached. It is claimed in behalf of appellee that these freight cars obstructed appellee's view of this train backing east, until almost the moment of the accident. A brakeman was standing on the east end of the east car, and it is claimed the air hose whistle was being shrilly sounded and could be heard at the crossing.

At the same time a Milwaukee & St. Paul switch train of twelve or more cars was coming in the opposite direction upon the main west-bound track adjoining. It is claimed on behalf of appellant that there was also a train consisting of an engine, a passenger car filled with employes and an empty parlor car standing upon the street crossing upon one of the tracks north of the two main tracks referred to. It is said the tower bell was ringing. The flagman was standing and waiving his flag close to the south track, between appellee and the track, on which the latter was injured.

Meanwhile appellee, having passed under or around the arm of the gate which extended over the west sidewalk on May street, was proceeding north and attempted to cross the main track. He was aware of the approach from the east of the west-bound freight train, which he seems to have intended to cross in front of, and, as many witnesses for appellant state, was running, apparently to get ahead of it. He was not, so far as appears, aware of the near approach of the east-bound coach train by which he was struck just as he reached the nearest of the two main tracks upon which it was moving. Appellee suffered the loss of both legs, which were amputated about midway between the knee and the thigh.

The cause has been tried four times. At the first trial the jury found for the defendant. The second trial resulted in a verdict for $12,000 for plaintiff, which was set aside by the court. At the third trial the jury disagreed. At the trial now under review the jury returned a verdict in favor of the plaintiff for $40,000, for which sum judgment was rendered. Defendant appeals.

CHARLES B. KEELER, for appellant; GEORGE R. PECK, of counsel.

DAVID K. TONE and H. M. ASHTON, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This cause was submitted upon counts which charged appellant with negligence causing the injuries complained of as follows: first, that the Chicago, Milwaukee & St. Paul Railway Company, by whose train appellee was injured, by permission of the defendant so carelessly, negligently and recklessly backed and propelled said train of cars by means of an engine attached to the rear of said train that appellee was struck and injured; second, that in violation of duty under an ordinance of the city, appellant negligently kept and maintained at the crossing of May street a flagman who failed and neglected to warn or signal the plaintiff of the approach of the train backing eastward; and lastly, that when plaintiff came near said crossing, defendant by its flagman carelessly and negligently signalled to plaintiff to cross said tracks, carelessly and negligently invited him to cross, and that he started to cross, relying on the invitation of the flagman.

It is insisted in behalf of appellant that these charges of negligence are not sustained by the evidence and that appellee was himself guilty of contrib-

utory negligence. Appellee's attorneys urge that this May street crossing was unusually dangerous, that thirteen regular trains passed over it during the hour following 5 o'clock P. M., as well as extra trains not indicated, it is said, upon the time tables; that the tower bells were ringing nearly all the time during that hour, and that the view of approaching in-bound trains was obscured on the west side of May street by a high board fence as far as appellant's right of way and thereafter by the switchman's "shanty" and freight cars on the switch tracks. There is in these facts, however, no evidence of negligence of the railway company. The crossing was dangerous as hundreds of others upon the great trunk lines of traffic running into Chicago. It is such conditions, inevitable and unavoidable at a grade crossing, if the railways are to properly serve the traffic of a great city, that have led to the elevation of tracks. They were, however, familiar conditions to appellee. Going over these tracks as he did every morning and night at about the same hour he could not have been ignorant of them, and if they called for care and caution on the part of the railroads, they called equally for all care reasonably necessary on his part to avoid injury. It is argued that the closing of the gates, the ringing of tower bells, the presence of the flagman afforded no warning, because the gates were frequently shut several minutes at a time and meanwhile there were those who passed under the gates as appellee did and who yet got safely over. The contention would appear somewhat novel that even though appellant employed the customary means to give warning of danger, appellee had a right to disregard such warnings, take his life in his hands and recover if injured, merely because he had become used to such warnings, paid no attention to them, and the passing of trains caused him inconvenience.

We are unable to concur in the contention that ap-

pellee's injuries were occasioned by negligence of those operating the train which struck him. It appears the ordinary precautions were taken. A man was stationed at the east end of the first or eastward car of the east-bound train on the lookout. There is evidence tending to show that the shrill whistle of the air brake hose was blowing. The flagman was in sight on the crossing and the tower bell ringing. The operatives on the train had no reason to suppose under these circumstances and no warning that appellee was about to rush onto the track in front of the car the instant it emerged from behind freight cars and reached the sidewalk crossing. There was no way consistent with the practical operation of the road to prevent him from being injured under such circumstances. Without such notice or warning, at least long enough before the injury inflicted to enable the train men "to have formed an intelligent opinion as to how the injury might be avoided and apply the means," they cannot be charged with negligence in that respect. C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 512; Theobald v. C., M. & St. P. Ry. Co., 75 Ill. App. 208-217.

It is contended in behalf of appellant that appellee was injured in consequence of his own contributory negligence. The latter testifies that he had reached the gates just as they were going down. He was thus notified that one or more trains were about to reach the crossing and that all persons were expected to keep off the tracks until informed by the raising of the gates that it was safe to go over. Appellee states, however, that he then looked in the direction of the flagman, who made a motion with his flag and said: "Come on, boys." Accordingly he started ahead, looked as he says to the west, in which direction he could see nothing, owing to the obstructions to the view on that side, but did see a freight train coming from the east. Assuming that the gates were closed solely on account of the approach of that train, and hearing and seeing

no indications of the coach train backing from the west, he promptly went ahead this distance of about sixty feet over two switch tracks and on to the east-bound main track, where he was instantly hit by the east-bound train. His witnesses place the freight train which appellee saw coming from the east and which he intended to cross in front of, all the way from about the east sidewalk on May street to the next street east, a block away, at the time when he was hit by the train coming from the other direction. There is evidence on the other hand that the engine of the freight train was nearer and that the car by which appellee was struck was about opposite the front of the train on the adjoining tracks when the accident occurred. There is also controversy as to the speed of the train by which appellee was struck, but we deem it immaterial under the conceded facts whether it was moving at six or twelve miles an hour. Neither rate of speed was excessive nor improper so far as appeared under the circumstances. There is abundant testimony tending to show that the tower bell was ringing and the bell of the switch or freight train coming from the west. There is also evidence above referred to tending to show that the air hose whistle on the approaching end of the train backing toward the east by which appellee was hit was being sounded. While appellee and his witnesses testify they did not hear it, and that no bell was rung and no whistle sounded by the east-bound train, it is apparent they were not, with the possible exception of appellee, in as favorable position to hear it, as were those who testify that the air hose whistle was sounding. There is a large amount of testimony to the effect that appellee was running to get ahead of the freight train as he approached the track where he was hit. This seems probable from the conceded facts, and his position when struck. At all events his attention was evidently concentrated on the train which he was endeavoring to get ahead of. There is testimony tending to show

that he was expressly warned of the approach of the coach train from the west, just before he stepped in front of it. There is no question that he could and must have seen it when he was yet six or seven feet from the track on which it was approaching, had he looked westward as he ought to have done at that time and place. For one to approach a main railway track as he did, whether walking or running, when crossing gates are down, tower bells ringing and a flagman waving his flag, without looking in both directions before placing himself, on the track in front of a train almost upon him must, we think, be pronounced negligent by all reasonable minds without hesitation or dissent. Bjork v. I. C. R. R. Co., 85 Ill. App. 269-272. As we said in Ludolph v. N. W. Ry. Co., 116 Ill. App. 239-244: When "crossing gates are lowered where two or more tracks are crossed by a street, they are a signal not merely of the use of the crossing by one train, but by all trains that may then approach and desire to pass; and no one is justified, so long as the gates remain down no longer than a reasonable time, to cross over on the supposition that another train will not pass over."

The contention of appellee's attorneys as stated in their brief is "that appellee crossed the tracks in reliance upon the invitation of the flagman at a time when numerous other persons were passing over the tracks in reliance upon the same invitation." The evidence relied on to sustain this contention is to the effect that the flagman made a motion with his flag and said: "Come on, boys." It is urged that inasmuch as some of these witnesses made motions in imitation of the alleged motions of the flagman, which are not reproduced in the bill of exceptions, this court has not before it all the evidence before the trial court and the jury. It appears, however, that this evidence in behalf of appellee was all of a character tending to show that these motions were such as appeared to invite appellee to go ahead. It is contradicted by a great preponder-

ance of witnesses, and is not of a character under all the circumstances to justify entire confidence. Assuming it, however, to be worthy of credence, it did not and could not justify appellee in going ahead with all the gates down and bell ringing and a train approaching without exercising all necessary care to look out for and avoid danger on the tracks.

It is said in B. & O. S. W. R. R. Co. v. Mullen, 217 Ill. 203-208, citing C & A. R. R. Co. v. Winters, 175 Ill. 293, "that the invitation or assurance of safety, given by a servant of the company may so qualify a plaintiff's act as to relieve it of the quality of negligence which it would otherwise have." In Chicago & Alton R. Co. v. Gore, 202 Ill. 188, it was said to be so far within the scope of the authority of the conductor of a railway train to advise and direct passengers in the matter of boarding a train, that compliance with such advice in boarding a moving train cannot be declared as a matter of law to be negligence that will bar a recovery "unless the danger is so open and obvious that only a reckless man would encounter it." Assuming, therefore, that appellee was thus invited by the flagman to go ahead when he did and try to cross the tracks ahead of approaching trains, it is obvious that he would not be thereby absolved from the exercise of such care and caution as the conditions manifestly called for, and we are not advised of any authorities so holding. Such invitation would not warrant him in exposing himself to open and apparent danger nor justify him in shutting his eyes nor in failing to look in all directions for approaching trains, and using more than usual care to avoid injury, since it was entirely apparent to him. at least that a train was approaching from one direction and that there might be a second train coming from the other direction. He knew that the alleged invitation was given, if at all, subject to his knowledge of these facts. If he accepted it, he did so subject to the perfectly apparent risks and

took the chances. Taking appellee's own version of the situation, it is evident that when he came within six or seven feet of the track upon which he was struck he could have seen the train, even if it had been a long distance off. He could not help seeing it if he had looked, when it was already close upon him. It is true that there may be circumstances that will excuse one crossing a railroad track from looking or listening at the moment. But in the case of steam railroads, such circumstances occur only under peculiar conditions. See C. & L. W. Ry. Co. v. Hansen, 166 Ill. 623-628. In Derk v. Railway, 164 Penn. St. Rep. 243-247, it is said of an individual under like circumstances: "At that point she was entirely safe, being about three steps from danger; yet she stepped on the track, and was struck the moment her foot touched it. The negligence on her part is so manifest that it would be a travesty on judicial trial to submit that fact to a jury." In C., B. & Q. R. R. Co. v. Damerell, 81 Ill. 454, it is said: "This court has repeatedly declared the doctrine that it is the duty of persons about to cross a railroad track to look about them and see if there is any danger; not to go recklessly upon the track, but to take the proper precautions themselves to avoid accidents at such places." In C., R. I. & P. R. R. Co. v. Bell, 70 Ill. 102-106, it is said to be "the general rule, that it is deemed culpable negligence to cross the track of a railroad without looking in every direction that the rails run." To the same effect is Ellis v. Boston & Maine Railroad, 169 Mass. 600-602, where the general rule is stated to be clear "that one who attempts to cross a railroad track must use his own powers of observation in a reasonable way to assure himself that there is no danger from approaching trains." This appellee did not do, and the consequences so serious to himself appear from the evidence to have been due to his own reckless negligence in rushing immediately in front of a train scarcely two feet from him, it is said, when he stepped on the track, with-

out observing ordinary precautions for his own safety.
The judgment of the Superior Court will be reversed
and the cause will be remanded for a new trial.

*Reversed and remanded.*