## Frank N. Wood, Appellant, v. Illinois Central Railroad Company, Appellee.

## Gen. No. 16,458.

1. INSTRUCTIONS—*effect of motion for peremptory.* A motion for a peremptory instruction is, in effect, a demurrer to the evidence, and admits not only the facts proved, but all the inferences reasonably to be drawn therefrom.

2. PASSENGER AND CARRIER—*obligation of latter to light right of way.* While a carrier is ordinarily under no obligation to light its entire right of way, yet if it habitually stops its trains at some point upon its right of way where there is no station house, and which was unprovided with the ordinary facilities for safely landing its passengers, an injury resulting to a passenger in consequence of a failure adequately to light the place at which such passengers were authorized by its invitation, express or implied, to alight, presents a question for the jury to determine whether such failure adequately to light even a portion of its right of way when taken in connection with the other circumstances constitutes negligence.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed and remanded. Opinion filed March 12, 1912. Rehearing denied March 26, 1912.

HARRY S. MECARTNEY and EVERETT M. SWAIN, for appellant.

CALHOUN, LYFORD & SHEEAN, for appellee; JOHN G. DRENNAN, of counsel.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

This is an action for personal injuries received by Frank N. Wood, on September 18, 1903, as he was alighting from a train of the Michigan Central Railroad Company, running upon the tracks of the Illinois

Central Railroad Company at or near its station in Chicago, known as "39th Street." A jury trial was had, and, at the conclusion of plaintiff's evidence, the court instructed the jury to find the defendant not guilty. The court overruled a motion for a new trial and entered judgment against appellant.

From the record it appears that, when the trial judge instructed in favor of the defendant, he gave the reasons for ·such action. The view taken by the trial judge was that, as to contributory negligence, the state of the record was such that it was a question of fact which it was his duty to submit to the jury, but that the testimony failed to show any negligence, either in the operation of the train, or in the matter of lighting the station grounds. Appellant asks a reversal of the judgment and contends that upon the testimony heard, the question of negligence of the defendant, as well as that of the contributory negligence of the plaintiff, were questions of fact which should be determined by the jury.

It appears that at the time of the accident, the station house of what is known as the 39th street station of the Illinois Central Railroad Company, stood along the western right of way of the Illinois Central Railroad Company south of 39th street, and adjacent to and abutting upon Oakwood avenue to the south, the main entrance to the station being a doorway opening directly upon the avenue. Neither 39th street nor Oakwood avenue crossed the tracks but both ended at the westerly right of way line, along which a stone fence of masonry is constructed to the north and to the south of the station house. This stone fence at Oakwood avenue is about seven feet in height from the level of the railroad tracks, but the level of the tracks is about two or three feet lower than the grade of the roadway in Oakwood avenue at that point. East of the station house were six

main tracks of the Illinois Central Railroad Company, designated and described, for convenience, as follows:

Track No. 1.    Local suburban trains from the city.

Track No. 2.    Local suburban trains to the city.

Track No. 3.    Through trains from the city, used by the Illinois Central and by the Michigan Central and the "Big Four," lessees, for the through trains.

Track No. 4.    Through trains to the city, used by the same roads.

Track No. 5.    Express suburban trains from the city, used by the Illinois Central R. R.

Track No. 6.    Express suburban trains to the city, used by same company.

Between tracks 1 and 2 (suburban) was a platform sufficiently elevated so that its floor was on a level with the floor of the cars of the suburban trains. This platform was about 300 feet long, having its south end a little to the north of the north line extended east of the station house, and extending north toward Thirty-ninth street. The exit of the station house, near a door-way at its northeast corner, was a wooden walk, built upon the level of the ground between the tracks, and with its top surface at about a level with the top of the rails, and leading to the space between tracks 3 and 4 (through trains), where it connected with a plank sidewalk, or platform, which was also on the ground level. This plank sidewalk, or platform, between tracks 3 and 4, was about 200 feet long, extending north and south a distance of about 100 feet, respectively, from the middle line of the station house. South from the south end of this sidewalk, or platform, the space between tracks 3 and 4 formed a sort of cinder walk; this sidewalk, or platform, between tracks 3 and 4, with the walk leading into the station, was used as a platform for passengers taking or leaving through trains, the passengers alighting from the inbound through trains on the west, or station-ward, side of the trains.

The interior of the station house was lighted as such places usually are; on the outside of the station house, and either over or near the door-way entrance into Oakwood avenue, was an electric light, which was about 10 feet high, or six or seven feet above the top of the stone wall; at approximately the center of the elevated platform, between suburban tracks 1 and 2, which extended north from the north line of the station house, there was a sheltered canopy along the edges of which were incandescent lights, besides which there were two arc lights upon this suburban train platform, and there is some evidence that there was an additional incandescent light on the east side of the station house near its exit trackward, but there was no light of any kind along or over the through track alighting platform, between tracks 3 and 4, nor along the platform leading into the station house from it, nor were there any lights to the east of it. The light nearest this alighting platform was that over or near the entrance of the station at Oakwood avenue, about one hundred feet away.

In practice, the front end of the north-bound through passenger trains usually stopped about 25 or 30 feet beyond the north line of the station house extended east; the rear cars and Pullmans of the trains stopping at a considerable distance south of the south line of the station house (150 feet or more), dependent upon the length of the train. The testimony of one of the witnesses tended to fix the distance at which the rear or south end of through north-bound passenger trains stopped, at about 266 feet south of the station house.

It was also the practice, when through inbound trains on track 4 were coming to a stop to discharge passengers at 39th street station, if it so happened that a north-bound Illinois Central suburban train was also approaching that station on track 2, the suburban train would come to a stop with its locomotive just

south of the south line of the station house, so as to allow passengers from the through trains to pass before it.

On the day in question, appellant, about fifty years of age, in good health, and in possession of his faculties, was a passenger on an inbound Michigan Central train, accompanied by his mother, an aged woman of about seventy, and was returning from Jackson, Michigan, his old home, where he had just taken the remains of his late wife for burial. With the others of his funeral party, when he left Chicago he took the train for Jackson at 39th street, and on their return they were expecting to leave the inbound train at that point. Their train was a through train of seven to nine cars, and he and his mother were seated about the middle of the third or fourth car from the front. When the train approached 39th street, the brakeman went through the car and called "39th street" twice, passing through the car from the front and out at its rear door. It was between 8:30 and 9:00 o'clock in the evening, and very dark.

After the station was called, appellant and his mother began to prepare for leaving the train. Appellant waited until the train had very little motion, then followed by his mother, he walked to the rear platform of the coach, carrying his valise. He testified that the train had almost stopped, and that when he got to the rear platform, it was very dark; "there were no signs of motion at all; the train seemed to have stopped." As he looked down over the platform, he described it as being "inky blackness" down below. He looked to the west, or city-ward, and saw across over on track 2 a suburban passenger train which seemed to him standing still, but which was, in reality, going at the same rate of speed and in the same direction as the train he was on. The cars of his train were not vestibuled and there was no brake-

man or conductor upon the rear platform. Supposing the train to be stopped, he stepped down, with one hand holding the rod or rail of the coach, and with the other holding his valise. The train was not stopped, but its motion was such that he was taken off his feet, and, though he hung to the rail of the car with his one hand, his shoulder hit upon something, and his hold on the rail broke, and he fell under the wheels, receiving the injuries complained of. It was found that the train passed about fifty feet beyond the spot where he was found lying.

Appellee's denial of liability is not based upon the ground that the train upon which appellant was riding, was being operated by its lessee, the Michigan Central Railroad Company. Indeed, it is not contended that its liability is less than it would be if the Michigan Central train, instead of being operated by the lessee of the Illinois Central Railroad Company, had been one of its own trains. But it insists that the evidence in the case does not tend to prove any negligence on its part, but does show that the appellant was clearly guilty of contributory negligence, as a matter of law.

Upon this hearing, we are not concerned with the character and extent of plaintiff's injuries,—the sole question before us is whether or not, upon the record, the trial court was justified in withdrawing the case from the jury by a peremptory instruction in favor of appellee.

The declaration, in its first count, alleged negligence on the part of the defendant in that the operatives of the train did not direct, warn or assist appellant in alighting therefrom, and that while he was attempting to so alight, the train was negligently jerked and jolted so as to throw appellant to the ground. In the second count, it was alleged that the appellee failed to provide a station properly lighted. In the third count it was charged that appellant was injured because ap-

pellee failed to construct and maintain a platform and lights at "said alighting place." While the fourth count alleged it to be appellee's duty to keep the station at 39th street in a proper and safe condition for passengers to alight, and to maintain proper platforms and sufficient lights for that purpose, and that said stopping place was poorly and insufficiently lighted, and no platform maintained there.

The motion, which the trial judge sustained, when he instructed the jury to find the defendant not guilty, at the close of plaintiff's evidence, was, in effect, a demurrer to the evidence, and this admitted not only the facts proved, but all the inferences reasonably to be drawn therefrom. Illinois Central R. R. Co. v. Bailey, 222 Ill. 480; Bartelott v. Bank, 119 Ill. 259 (269); Fraser v. Howe, 106 Ill. 563.

That the train upon which the appellant was riding, was not negligently jerked or jolted so as to throw him off, is clearly established by the evidence, and so far as that feature of the case is concerned, the court below was clearly right. Nor did the calling of the station by the conductor or brakeman, standing by itself and taken alone, constitute negligence. Nevertheless, the fact that the conductor or brakeman passed back through the car upon which appellant was riding, and twice called out the station, "39th street," as the train was approaching that stopping place, was a circumstance which the jury had a right to consider in connection with all the other circumstances connected with the accident, so that, from such consideration of all the surrounding circumstances, it might determine whether or not the defendant was negligent, and the plaintiff free from contributory negligence. B. & O. S. W. R. R. Co. v. Mullen, 217 Ill. 203; Chicago & Alton R. R. Co. v. Arnol, 144 Ill. 261; McNulta v. Ensch, 134 Ill. 46; Ardison v. Illinois Central R. R. Co., 155 Ill. App. 274, affirmed in 249 Ill. 300.

Appellee's liability, if it exists, was not created

merely by the act of the brakeman in calling the station, but because it allowed such conditions to exist at the time and place in question, as, when taken together, constituted negligence on its part. Among the facts and circumstances appearing in the record, which, when considered together and in their relation to each other, seem to us to have a significant bearing, both upon the question of the negligence of the appellee, and the question as to whether or not appellant was guilty of contributory negligence, are the following:

Under the management of appellee, its north-bound suburban train stopped opposite the rear platform of the through trains of the Michigan Central, with the Illinois Central locomotive approximately opposite the middle of the through trains of the Michigan Central; this was evidently done for the purpose of enabling the passengers upon the Michigan Central trains to readily reach the station of the appellee, through which they passed out upon Oakwood avenue. In addition, it appears that at and about the time of the accident, trains on parallel tracks, used by the two roads for their suburban and other business respectively, were permitted to run alongside of each other in approaching 39th street station and slow up at the same time, and thus produce a condition which might easily create the impression upon passengers, who are preparing to leave the train at the station, which appellant testified was produced upon him,—namely, that of obliterating the sense of motion of the train upon which he was riding, and from which he was about to alight. It further appears from this record that passengers from the inbound through cars, who chanced to be upon the rear part of the train, were required, or permitted, to alight upon a portion of the grounds, or right of way, of the railroad company beyond the platform, or sidewalk, built for that purpose, and beyond a point at which the approaches

to the station ground were adequately lighted.

To hold that appellee was under no obligation to its passengers to do any more than light its station house and the platform immediately adjoining, would, under the facts shown by this record, seem to us to unjustly limit and narrow its obligation. While it is undoubtedly true that the Railroad Company is under no obligation to light its entire right of way along which its cars are merely passing, yet, if it habitually stopped its trains at some point upon its right of way where there was no station house, and which was unprovided with the ordinary facilities for safely landing its passengers, and injury should result to any of them in consequence of a failure to adequately light the place at which such passengers were authorized, by its invitation, express or implied, to alight, we think it would clearly present a question for the jury to determine whether such failure to adequately light, even a portion of its right of way, when taken in conjunction with the other circumstances, constituted negligence.

The contention of appellee is that while it may be true that reasonable minds may believe that the accident to Wood resulted because the regular station was not sufficiently lighted, still appellee is not liable because appellant did not get off the train at the platform provided for alighting passengers, but at a point some distance from it, consequently he was not legally entitled to the benefit of such lights as should have been on the platform, which were provided for the benefit of passengers getting off a train there; they were not there to afford light to mistaken passengers who get off the train on the right of way. If it be true, as we think the evidence tends to show, that passengers, upon incoming through trains, were accustomed to alight, with the tacit approval of the Railroad Company, further away from the station house than the platform extended, we think the com-

pany was under legal obligation to light up such por-
tion of their grounds as was thus used by alighting
passengers, and that their failure to do so would raise
a question of fact for a jury as to whether or not
such failure constituted negligence. In our judg-
ment, the mere fact that appellant alighted from the
train, under the circumstances shown by this record,
while it was still in motion, did not constitute con-
tributory negligence as a matter of law, and we think,
therefore, the learned judge, who tried the case be-
low, correctly held that the question as to whether
or not appellant was guilty of contributory negli-
gence was one of fact to be submitted to a jury instead
of one of law to be decided by the court; and, under
the law of this state, and the case as disclosed by the
record, we think the question as to whether or not
appellee was guilty of negligence was also one of
fact, which appellant was entitled to have submitted
to a jury.

The case of B. & O. S. W. R. R. Co. v. Mullen, 217
Ill. 203, was very much like the case at bar. In it
the court held that in determining whether its passen-
ger, Mullen, was negligent in getting off one of its
trains while still in motion, the facts that it was dark
and Mullen felt no motion and believed the train had
stopped, and that the place at which he alighted was
one which he understood the conductor or brakeman
announce as the depot, were proper to be considered
by the jury, and that alighting from a moving train in
the darkness at the direction of the conductor or
brakeman, or upon a reasonable belief that the train
had stopped, was not negligence *per se*.

In that case, it appeared that the station was called;
that it was dark; the evidence conflicted as to whether
or not the conductor or brakeman was on the plat-
form and informed him as to the location of the sta-
tion at which he attempted to alight; Mullen stepped
off before this station was reached. The similarity

in the facts between the Mullen case and the one at bar is very marked. In that case the court said:

"Without attempting to distinguish between cases, which seem to hold, that it is negligence as a matter of law to attempt to alight from the car of a train, propelled by steam, while it is in motion, and those, which hold that the question, whether such attempt constitutes contributory negligence or not, is a question of fact for the jury, it is sufficient, for the purposes of the case at bar, to say that, where a passenger alights from a train at a particular point upon the invitation of the conductor, or brakeman, or other employe on board the train, *or where such passenger alights from the train under the belief that it is not in motion, and the circumstances show that there is reasonable ground for such belief,* then these facts may be taken into consideration by the jury in determining whether the plaintiff has or has not been guilty of contributory negligence." * * * "There are also cases, where the facts show that the party, alighting from a moving train, had reason to believe that the train had stopped. Where such belief has a reasonable basis in the facts and circumstances, surrounding the party at the time of the accident, the act of alighting does not, in and of itself, amount to negligence as matter of law." Citing cases.

In Ardison v. Illinois Central R. R. Co., 155 Ill. App. 274, the court held that it was not negligence *per se,* even for a passenger to get off a moving train, when not instructed or directed to do so by some representative of the Railway Company, without regard to the attending circumstances, and that whether or not it is negligence to do so depends upon such surrounding circumstances. In that case, Ardison was a passenger from Freeburg to Wilderman on the railroad company's train, consisting of a mail, express and baggage car, a smoking car and two first-class coaches. He had with him a basket of groceries

Wood v. Ill. Cen. R. R. Co., 167 Ill. App. 644.

and a can of oil, with which he went to the forward end of the smoking car where he remained until the train arrived at Wilderman. At Wilderman there was a station with a platform about 145 feet long and 12 feet wide, though there was no depot building. On the opposite side of the platform from the main track, there was a wood shed, and at the north end of the platform, (the train in question was going north) there was a small block house used as a telegraph office, with a window on the south side and two on the east side, and there were no other buildings in the neighborhood near enough to furnish light. The only lights about the platform were two oil lamps inside of the block house, which would illuminate only about two feet of the platform. The train reached Wilderman after dark, about thirty minutes late, and it ran so far north that the north end of the smoker was beyond the end of the platform. When the train was approaching the station, it was called, and the passengers therefor prepared to get off. Ardison, with some others, went out on the north platform of the smoker and held the basket and can in one hand, while with the other he held on to the platform railing. He descended the steps and in alighting, was thrown on the ground north of the platform and under the train. There was no evidence that the train jerked, but Ardison testified that it was going so slow he thought it had stopped. He said that there was no light on the platform; that it was dark and he could not see. No other witnesses seemed to know just how the accident happened, and the court held that under this evidence it was a question of fact for the jury to determine whether or not the absence of sufficient light upon that platform was the approximate cause of his injury, and whether or not, under the circumstances, he was in the exercise of ordinary care. The court said: ''The obligation of appellant to the appellee, as a passenger, was to use the

highest degree of care for his safety, consistent with the practical operation of its road, and if lighting this platform and premises were necessary to the exercise of that degree of care, it was its duty to have the light.'' This judgment the Supreme Court affirmed. Ardison v. Illinois Central R. R. Co., 249 Ill. 300.

We think the facts in that case and the one at bar so similar, that the law laid down in that case governs this. Both upon principle and authority, we think the judgment of the court below was wrong, and it will be reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*