(No. 11711.—Reversed and remanded.)

CHARLES BUSACK, Defendant in Error, *vs.* THE CHICAGO CITY RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed February 20, 1918—Rehearing denied April 4, 1918.*

1. NEGLIGENCE—*what is not an invitation from motorman for passenger to alight from street car.* No inference of an invitation to alight from a street car before it comes to a stop can be drawn from the fact that the motorman looked around at a passenger when he unlatched the door.

2. SAME—*passenger suing for injury received while alighting from a moving car must prove negligence.* A passenger suing a street railway company for an injury received while alighting from a moving car must prove negligence on the part of the defendant, and the facts that the night was dark and there was but one light at the intersection of the streets relate only to the question whether the passenger was exercising ordinary care in alighting and have no tendency to show negligence by the defendant.

3. SAME—*street railway employee is not negligent in unfastening exit door before car stops.* The act of a street railway motorman in unlatching the exit door of his car after the car has slowed down but before it comes to a full stop is not, of itself, an invitation to passengers to alight and is not a negligent act, and where no other negligence is alleged or proved there can be no recovery by a passenger who opened the door after it was unlatched and was injured while alighting from the moving car.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

HARRY P. WEBER, GEORGE W. MILLER, and ARTHUR J. DONOVAN, (JOHN R. GUILLIAMS, and BENJAMIN F. RICHOLSON, of counsel,) for plaintiff in error.

JAMES C. McSHANE, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error, Charles Busack, brought suit in the circuit court of Cook county against the plaintiff in error, the Chicago City Railway Company, to recover damages resulting from his fall upon the street in stepping from the defendant's street railway car when the car was still in motion, and recovered a judgment for $4750 and costs, which was affirmed by the Appellate Court for the First District. A writ of *certiorari* was awarded on the petition of the plaintiff in error, and the record is in this court for a review of the judgment of the Appellate Court.

The declaration alleged that the plaintiff was a passenger on a car of the defendant which had an enclosed vestibule at the front end with a door in the vestibule at the side, which it was customary for the defendant to keep closed except at the time when the car was standing and passengers being discharged; that the door was held closed and fastened by a latch and appliances in the control of and operated by the motorman, who was accustomed to unfasten the door when the car came to a stop at a point where passengers were to be discharged and passengers desiring to alight opened the door; that as the car approached the intersection of Sixty-fourth street and Cottage Grove avenue the plaintiff was riding in the vestibule and informed

the motorman that he desired to alight at Sixty-fourth street; that in approaching the crossing the motorman reduced the speed to stop the car and permit the plaintiff to alight, and as the car was coming to a stop, and before it had stopped, the motorman unfastened the door, and the plaintiff thereupon opened the door and stepped from the car, supposing that it had stopped, and was thrown violently to and upon the ground and injured.

At the conclusion of the evidence the defendant moved the court to instruct the jury to find it not guilty, but the instruction was refused, and the refusal is assigned for error on the ground that there was no evidence fairly tending to prove that the act of the motorman in unfastening the door so that plaintiff could open it constituted negligence.

The construction of the car and vestibule and the control and method of use of the sliding door were agreed upon by the attorneys. The car was entered from the rear and there was an exit at the front end from the vestibule, in which there was a sliding door at the side, which passengers opened to get off. The door slid into a groove at the side of the car and was fastened and unfastened by means of a latch connected by pulleys and a rope to a brass handle at the end of the rope in front of the motorman, above the lever which controlled the air. The brass handle was managed with the same hand as the lever for the air, and when the door was closed the motorman would shove the handle in a slot and to unlatch the door would pull the handle out of the slot, which would uncouple the latch, and the motorman would catch the lever again to release the air and make the stop. When the door was unlatched the passenger could open the door and slide it back and alight from the car. There was no dispute as to what occurred at the time of the injury. The car was running south on Cottage Grove avenue on the west track toward Sixty-fourth street at about nine o'clock in the evening of July 3, 1912. The plaintiff was riding in the vestibule with the motorman and

they were the only persons in the vestibule. As the car reached the center of the block between Sixty-third street and Sixty-fourth street the plaintiff said to the motorman, "Sixty-fourth street, please." The car was to stop on the south side of the crossing and as it approached the crossing the motorman began to slow it up. As the car neared the stopping place the motorman unfastened the latch to the door and looked around at the plaintiff. The plaintiff was standing near the door and pulled it open and stepped down on the step. The car had not come to a stop and ran about ten feet further, and the plaintiff in getting off fell down and his collar bone was broken, from which injury it was claimed that the use of his left hand was materially impaired.

It was alleged in the declaration that it was customary to keep the door closed and fastened except when the car was standing still and passengers were being discharged, and the plaintiff testified that he had observed such a habit of motormen in riding upon cars of the defendant. If unlatching the door while a car was in action was an invitation to a passenger to alight while the car was moving and was a negligent act, evidence of a custom or habit of doing that thing would be inadmissible for the defendant on the question of its negligence, and whether evidence that it was customary for the motorman not to unlatch the door until the car was standing still would be admissible on the question of ordinary care on the part of the plaintiff is not involved in the question under consideration. At any rate, there was no evidence fairly tending to prove a certain uniform and well known custom affording a presumption that it was generally known to the public and upon which they could rely for their safety. It might be that if a single passenger was about to alight the car might be brought to a standstill before unlatching the door for him, while there would be a very different question involved at a place where a great many passengers were to be discharged, and the effect of

such a custom would materially delay passengers and the running of trains.

The single question presented on the refusal to direct a verdict is whether the act of the motorman in unfastening the door so that the plaintiff could open it was an invitation to the plaintiff to open the door and alight from the car before it stopped, and on that question all authority to which we have been referred, in which it was the single question, is that it was not negligence. The question has been decided as to steam railroads, elevated railroads and street railways. The case of *Mearns* v. *Central Railroad Co. of New Jersey,* 163 N. Y. 108, related to the negligence of a steam railroad company. The plaintiff was a passenger on a train from Washington to Jersey City which arrived at Jersey City about six o'clock in the evening, and as it neared the station at that place the conductor called out, "All out; Jersey City; last stop." The conductor or guard stood facing the door of the vestibule, which had not been opened. The plaintiff stood leaning against the partition and stood waiting for half a minute, during which time the train was still in motion. The guard then opened the door and stepped across to the vestibule of the other car, and the plaintiff, supposing the car had stopped, passed down the steps and off onto the platform, and as he did so fell and was injured. The guard was practically facing him as he passed out the vestibule and down the steps but gave him no warning that the car had not stopped. The trial court dismissed the complaint, and the court of appeals held the ruling was right, and said that there was a total absence of any act or direction of those having charge of the train which interfered with the free agency of the plaintiff, and that the call of the guard was merely notice to the passengers that the train was nearing the station in order that they might get ready to alight. The judgment in that case being a non-suit, a new action was brought in the Federal court, and that court directed a verdict for the de-

fendant upon the opening statement of plaintiff's counsel. The circuit court of appeals affirmed the judgment and denied the claim of the plaintiff that the call of the guard, followed by opening the vestibule door, was an invitation to the plaintiff to alight. (*Mearns* v. *Central Railroad Co. of New Jersey,* 139 Fed. Rep. 543.) The same conclusion was reached by the Supreme Court of Massachusetts as to an elevated railway in two cases. In *Hannon* v. *Boston Elevated Railway Co.* 182 Mass. 425, suit was brought by a passenger for an injury to his hand by the guard opening the door before the train had come to a full stop. If the act was negligence the defendant was liable, but if it was negligence it was only because the train had not come to a standstill. The court said there is no reason to anticipate danger from beginning to get ready for an exit before the train has come to a full stop, and to hold that the guard shall not begin the process for letting passengers out until the cars come to a complete standstill would impose an unnecessary and unreasonable restriction, whose effect would delay passengers and prolong the running time of trains. In *Elger* v. *Boston Elevated Railway Co.* 115 N. E. Rep. (Mass.) 242, the car of the elevated railway company was equipped with a sliding door opening into a recess in the side of the car, as in this case, but was opened by the motorman. He opened the door before the car had come to a full stop, when it was slowing down. A passenger brought suit against the company for damages occasioned by his going down the steps of the car to the ground thinking that the car had stopped. The court said that the opening of the door and the announcement of the name of the next stop plainly did not constitute an invitation to the plaintiff to alight from a moving car, and exceptions to the verdict directed by the trial court were overruled. In *Paginini* v. *North Jersey Street Railway Co.* 69 N. J. L. 60, the passenger was carried past his street and complained to the motorman, who brought the car to a stop and opened the

gate for the plaintiff to alight, and, while there was other undoubted negligence, the judge at the trial charged the jury that the motorman was negligent in opening the gate and allowing the man to get off before the car stopped, and the court considered that question. The court held that the charge was wrong, and that the mere opening of the gate by the motorman would not raise any presumption of actionable negligence against the defendant. The case of *Farrell* v. *Washington Water Power Co.* 83 Wash. 319, does not hold differently. The ground for the action there was the sudden jerking forward of the car after the gate had been opened, and the plaintiff, who was on the platform, was thrown off in consequence of the negligent act.

It would, of course, be unreasonable to say that opening a gate is not an invitation to a passenger to prepare to alight from a car and to stand on the platform, or perhaps on the steps, until the car comes to a stop, when he can alight with safety. In all the cases ·referred to, the guard or motorman opened the door or gate, while in this case all that the motorman did was to unlatch the door so that the plaintiff could open it whenever he saw fit. No inference of an invitation to alight from the car before it came to a stop can be drawn from the fact that the motorman looked around at the plaintiff when he unlatched the door. The plaintiff had told the motorman that he wanted to get off at Sixty-fourth street, and it was the most natural thing for the motorman, when he unlatched the door, to look around at the plaintiff to let him know that this was his stopping place. Motormen are prohibited from talking to passengers, but the signal given by looking around carried with it no invitation to get off the car before it stopped. It is a common practice for passengers to step down and stand on the step before a car stops, preparatory to alighting when it stops, and as it has never been regarded as negligence in a passenger to do that, it cannot be considered

negligence to permit him to do it. The night was dark and there was but one light at the intersection of the street, but those facts related only to the question whether the plaintiff was exercising ordinary care, and, no matter what degree of care was exercised by him, he could not recover except upon proof of negligence on the part of the defendant. No negligence was alleged or proved except the unlatching of the door before the car came to a full stop, and unless that act was negligence there could be no recovery. That it was not an invitation to the plaintiff to alight from the car while it was still moving has been decided in all the cases to which we have been referred where it was involved, and that being so, the court erred in refusing to direct a verdict of not guilty.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*