R. E. AMIDON, ADMR. *v.* TWIN STATE GAS & ELECTRIC CO...

October Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX, JJ.

Opinion filed November 6, 1929.

268

*C. Menzies Miller* and *George H. Thompson* for the defendant.

*Orrin B. Hughes, Ernest W. Gibson, Jr.,* and *Frank E. Barber* for the plaintiff.

Slack, J. The deceased received the injuries from which she died in alighting from one of defendant's busses while it was in motion. This action is brought under G. L. 3315 for the benefit of the husband and next of kin. The case is here on defendant's exceptions.

The first exception is to the refusal of the court to grant defendant's motion for a directed verdict. The vital question raised by this exception is whether the opening of the bus door by the driver in the circumstances shown by the evidence constituted an invitation for deceased to alight when she did. Among the facts shown by the undisputed evidence are these: Defendant's busses were run on schedule time and had regular stopping places where passengers were received and discharged. The deceased lived on the south side of Western Avenue in the village of Brattleboro. At the time of the accident there was a regular stopping place for defendant's busses 218 feet east of where she lived and another 178 feet west of where she lived— none between. She took the bus near its starting place, about three-fourths of a mile from her home, at 10.20 o'clock in the evening of September 15, 1927. When it arrived at a point on Western Avenue opposite her home she told the driver that she "wanted to stop here" or asked him to "let her off." He said "Next stop?" or asked her "if she wanted the next stop" and she said "Yes." The driver immediately shut off the gas, and the bus, which was then running from fifteen to twenty miles an hour, slowed down gradually without "jerk" or "lurch" to about ten miles an hour, its speed when deceased stepped out of it. About the time the driver shut off the gas he opened the door which was on the right-hand side of the bus at the front end. The deceased left her seat "just after" he did this, or "a few seconds afterwards," walked to the front of the bus, stepped into the "pit," which is a place in front of the door, inside the bus, eight or ten inches lower than the main floor, took hold of the rod on the right of the door and stepped off into the street. The driver saw her just as she stepped from the bus, too late to prevent her doing so. The bus traveled about ninety feet after deceased spoke to the driver before she left it. It was a clear but moonless night. How much could be seen by looking out of the side windows of the bus is uncertain, since the witnesses apparently gave that little attention at the time. Deceased's husband testified that it was "neither very dark nor light * * * * things would seem shadowy"; that from his home he could see the bus where it stood after the accident, seventy-five to a hundred feet away, "more or less distinctly." There was a street light 223 feet east of where deceased spoke to the driver and one 177 feet west of where she spoke to him, and another 276

feet farther west. The bus was properly lighted inside and equipped with headlights, in good condition, and so adjusted that the driver, whose position was in the front of the bus opposite the pit, could see the width of the street, the ditches, the curbing, etc., for a distance of from forty-eight to ninety-six feet ahead of the bus. The windshield was glass, and there were windows on either side and in the rear of the bus. There was a mirror in front of the driver to enable him to watch traffic behind him, but it did not give him a view of passengers in the bus unless they were "way in the back end." The surface of the street was smooth and glossy and almost black. Two of plaintiff's witnesses, Johnson and Wade, the only persons on the bus other than the deceased and the driver, who, so far as appeared, remained in their seats until the bus stopped testified that they knew that it was in motion when deceased asked the driver to let her off and also when she stepped out of it. They were not very certain how they knew this, whether from what they observed outside, or from the motion of the bus, or both. They testified that they could see through the bus door when it was open, and saw deceased when she fell. The deceased was fifty-three years old, in excellent health, had good eyesight and was a person of more than ordinary intelligence. She had lived where she did at the time of her death about eleven years and had ridden on busses occasionally.

The evidence as to where she sat in the bus, and whether the bus stopped to take on and discharge passengers at or near where she alighted, notwithstanding that was not a regular stopping place, was conflicting.

■ Our view of the case renders the first question immaterial. As to the other, we think the evidence viewed in the light most favorable to the plaintiff, as it must be, might fairly be construed as tending to show that busses had stopped in the vicinity of her home so recently, to let her and other members of her family off, that she might reasonably have understood that such practice still continued, although in fact it had been abandoned.

■■ The mere opening of the exit door of a public conveyance of whatever character following a request by a passenger to be let off at the next stop does not constitute an invitation to him to alight when the vehicle is in motion, if he knows, or in the exercise of the care of a prudent person ought to have

known, that fact. *Elger* v. *Boston Elevated Railway*, 226 Mass. 84, 115 N. E. 242; *Busack* v. *Chicago City Ry. Co.*, 283 Ill. 117, 118 N. E. 1041, L. R. A. 1918D, 416; *Paginini* v. *North Jersey St. Ry. Co.*, 89 N. J. Law, 60, 54 Atl. 218; *Kirby* v. *United Rys. Co., etc.* (Mo. Sup.), 242 S. W. 79. It is a matter of common knowledge to all persons of ordinary intelligence that the act of alighting from moving vehicles is attended with danger, and the fact that many do it does not lessen the element of chance or afford relief to one who is injured through his own folly.

Doubtless the opening of the exit door of a public conveyance of any kind, by the one in charge, may in certain circumstances constitute negligence whether treated as an invitation to the passenger to alight or as an assurance that he can safely do so. The effect of such act necessarily depends on the attending circumstances.

 In the instant case the door was opened immediately after the driver learned that deceased desired to get off at the next stop, when the bus was traveling from fifteen to twenty miles an hour. Obviously, this was not an invitation for her to alight then, or an assurance that she could then do so with safety. If not a present invitation or assurance of safety, when was she entitled to treat it as such, if at all? Not until the bus was at a standstill, or its speed so reduced that a prudent person, in the exercise of due care, might reasonably have thought it was. That the bus was not at a standstill when deceased alighted all agree. The question therefore is: Was its speed then such that a prudent person in the exercise of due care might reasonably have thought it was? The answer to this question depends upon the attending circumstances, the actual speed of the bus at the time, whether it was running smoothly or otherwise, the deceased's position in it, what could be seen outside from any viewpoint reasonably available to her before she alighted, had it reached the place where she was accustomed to leave it, etc. While the evidence tended to show that the surface of the street was smooth, that after the driver shut off the gas the bus slowed down gradually without jerk or lurch and that nothing, or but little, could be seen through the side windows to indicate that it was in motion, it also showed, without contradiction, that there was something about the situation which apprised the other passengers, both of whom were called by the plaintiff, that it had not stopped. One of them testified

that it was running not "very far from ten miles an hour" when she got off, and this was accepted throughout the trial as its then speed. He further testified that he could see the lights in the houses they passed, that he could feel that the bus was moving as he sat in his seat and that "there was kind of a jar to it." This was undisputed. It further appeared that the deceased was facing the windshield, or window in the front of the bus, as long as she remained in her seat, whichever seat she occupied, and after she left her seat until she reached the pit. There can be no doubt but that by looking through the windshield she could have told not only that the bus was in motion but that it was moving quite rapidly. To be sure, the evidence tended to show that because of her position in the bus, and especially after the door was opened, her view through the windshield was not as good as the driver's, but even so, it is perfectly obvious that her view was such that she could have told that the bus was moving had she taken the trouble to look. Moreover, the witness who sat back of the driver testified that he could see out through the door after it was opened because there was a little reflection from the lights inside the bus, and this was not questioned. The deceased had the same opportunity to see that the witness had after she reached a point in the aisle opposite his seat, assuming that she sat where plaintiff claims she did, until she alighted; indeed she had a better opportunity than he most of the time because she was nearer the door. In the circumstances, the open door did not tend to show that the bus had got to her stopping place or was at a standstill when she alighted, because that was opened when she notified the driver that she wanted to get off, when the speed of the bus was from fifteen to twenty miles an hour, such that no one in the exercise of due care could have failed to know that it was in motion. Had the door been opened after she reached the pit it might have tended to show that the bus had stopped, but it had no such tendency in the circumstances shown.

The foregoing circumstances taken in connection with the fact that deceased was a person of mature years, had good eyesight and more than ordinary intelligence, admit of but one conclusion, namely, that she knew, or in the exercise of due care ought to have known, that the bus was in motion when she alighted. She either misjudged its speed and took a chance, or acted with sheer thoughtlessness or inattention.

The court charged, and we think correctly, at least it was not excepted to, that unless the open door amounted to an invitation for the deceased to alight when she did, no negligence on the part of the defendant had been shown. Since it did not amount to an invitation, the judgment must be reversed.

*Judgment reversed, and judgment for defendant to recover its costs.*